**CELADON TRUCKING SERVICES, INC., Appellant,**

v.

**TITAN TEXTILE COMPANY, INC., Appellee.**

No. 14–02–00906–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 12, 2004.

Karl Koen, Scott Whisler, Dallas, for appellant.

Robert G. Moll, Steven P. Vangel, Houston, for appellee.

Panel consists of Justices YATES, HUDSON, and FROST.

## SUBSTITUTE OPINION

KEM THOMPSON FROST, Justice.

We overrule the motion for rehearing filed by appellant Celadon Trucking Services, Inc. We withdraw the opinion is-

sued in this case on October 23, 2003, and we issue the following opinion in its place.

This is a case between a shipper and a carrier under the Carmack Amendment, a federal transportation statute that creates a uniform federal law regarding the liability of interstate carriers for lost or damaged goods.[1] We must decide whether a provision in the parties' contract constitutes an express waiver of protections afforded the shipper under this statute and, if not, whether the shipper agreed to limit the carrier's liability for losses. The carrier, appellant Celadon Trucking Services, Inc., appeals the trial court's judgment against it and in favor of the shipper, appellee Titan Textile Company, Inc., on Titan's claim under the statute. We find no express waiver of the statute's provisions in the parties' contract and no limitation of the carrier's liability, and we affirm the trial court's judgment on the shipper's statutory claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Titan, the shipper, brought this suit against Celadon, the carrier, under the Carmack Amendment to recover damages for the loss of a cargo of synthetic yarn owned by Titan and lost while being transported from Dillon, South Carolina to Mexico City, Mexico. Both parties moved for summary judgment. The trial court did not rule on the motions for summary judgment and instead called the case to trial.

█ At trial, Titan introduced Plaintiff's Exhibit 1, containing the transportation contract between the parties (hereinafter "Contract"), and it was admitted into evidence without objection. Counsel for both parties then stipulated to the following facts:

- Titan and Celadon entered into the Contract.
- On February 10, 2000, Celadon issued a through bill of lading[2] from Dillon, South Carolina to Mexico City, Mexico, covering 292 cases of yarn owned by Titan.
- Celadon received the shipment of yarn in good order and condition.
- On or about February 29, 2000, the shipment of yarn was stolen in Mexico and not recovered.
- The value of the shipment of yarn was $32,795.78.
- Titan has established a prima facie case on liability against Celadon under the Carmack Amendment.

Celadon offered no evidence; instead, Celadon argued Titan had expressly waived the protections of the Carmack Amendment as to transportation in Mexico, or in the alternative, agreed to limit Celadon's liability to zero for losses in Mexico under Section 19 of the Contract. The trial court rendered judgment in favor of Titan for the full amount of its claim plus prejudgment interest, postjudgment interest, and costs of court. The trial court did not issue findings of fact or conclusions of law.

On appeal, Celadon asserts that, even though the parties did not comply with the requirements of Texas Rule of Civil Procedure 263, entitled "Agreed Case," we should treat this case as one involving an agreed statement of facts under this rule because the record indicates that the trial court heard the case on stipulated facts. See TEX.R. CIV. P. 263; *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex.App.-Fort Worth 1996, writ denied) (holding that appellate court may treat appeal as

---

1. *See* 49 U.S.C. § 14706.

2. A "through bill of lading" is a contract of carriage that governs the entire transport of

cargo from its origin to its destination. *Indem. Ins. Co. of N. Am. v. Hanjin Shipping Co.*, 206 F.Supp.2d 927, 931 (N.D.Ill.2002).

involving agreed statement of facts, despite failure to comply with Rule 263, if the record indicates that the trial court heard the case on stipulated facts). Titan disagrees.

## II. STANDARD OF REVIEW

■ If we were to treat this case as an appeal involving an agreed statement of facts under Rule 263, as Celadon urges, then the standard of review would be whether the trial court properly applied the law to the agreed facts, and this court would not presume any findings in favor of the trial court's judgment. *See State Farm Lloyds,* 932 S.W.2d at 735–36. Titan claims that, in the absence of findings of fact and conclusions of law, this court must imply that the trial court made all the findings necessary to support its judgment. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). We have found no cases from either the Texas Supreme Court or this court that address this Rule 263 issue. However, we can resolve this case based on the stipulations and uncontroverted evidence at trial, the unambiguous Contract, and the unambiguous statutes involved, without relying on any implied findings to support the trial court's judgment. Therefore, we need not address this issue regarding Rule 263, because it does not affect the determination of this appeal.

## III. ISSUES AND ANALYSIS

### A. Did the shipper expressly waive the protections of the Carmack Amendment in the Contract?

■ The Carmack Amendment governs the liability of truckers and other carriers that transport interstate shipments or shipments from the United States to adjacent foreign countries, such as Mexico. It is a uniform system of carrier liability and represents the shipper's exclusive remedy against a carrier for goods lost or damaged during shipment.[3] *See Hoskins v. Bekins Van Lines,* 343 F.3d 769, 773–78 (5th Cir. 2003); *D.M. Diamond Corp. v. Dunbar Armored, Inc.,* 124 S.W.3d 655, 660–62 (Tex.App.-Houston [14th Dist.], 2003, no pet. h.). The statute provides protections for shippers; however, these protections can be waived. *See* 49 U.S.C. § 14101(b)(1).

In the first part of its argument under its sole issue on appeal, Celadon asserts that, in Section 19 of the Contract, Titan expressly waived all rights it had under the Carmack Amendment to recover against Celadon based on the transportation of goods under the Contract in Mexico. Celadon bases its argument on the following statutory provision:

> If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part [the part of the United States Code that includes the Carmack Amendment] for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies.

49 U.S.C. § 14101(b)(1).

■ We review the trial court's interpretation of applicable statutes *de novo.*

---

3. There is a conflict between some federal decisions and Texas Supreme Court precedent regarding whether the Carmack Amendment preempts a claim under the Texas Deceptive Trade Practices Act based on a misrepresentation alleged to have been made before the parties entered into the contract. *See D.M. Diamond Corp. v. Dunbar Armored, Inc.,* 124 S.W.3d 655, 661 n. 7 (Tex.App.-Houston [14th Dist.], 2003, no pet. h.). This issue is not before us in this case.

*Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655–56 (Tex.1989). In construing this statute, we look first at the language of the entire statute.[4] *See Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 950, 151 L.Ed.2d 908 (2002). Based on this review of the statutory language, we determine whether the statute has a plain and unambiguous meaning regarding the issue before us. *See id.* The inquiry stops if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." *Id.* (quotations omitted). We read the words of a statute in their context, taking note of their place in the overall statutory scheme. *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000).

■ The parties have not cited, and we have not found, cases from Texas or any other jurisdiction applying the above statutory waiver provision. The statute specifically requires that the parties "expressly waive" any or all of the rights and remedies in question. *See* 49 U.S.C. § 14101(b)(1). The main issue in this appeal is whether the Contract contains a provision that expressly waives Titan's rights and remedies under the Carmack Amendment relating to the transportation of goods under the Contract in Mexico. Titan and Celadon both assert the Contract has a plain and unambiguous meaning, and we agree. The plain meaning of "expressly" is "clearly and unmistakably communicated; directly stated." BLACK'S LAW DICTIONARY 601 (7th ed.1999); *see also Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 192–93, 200, 205–06 (Tex. 2001) (equating "express" with "states with unmistakable clarity" and with "clearly and unequivocally states"). Because the statutory scheme is coherent and consistent, we give effect to the plain and unambiguous statutory language as a matter of law. *See Barnhart,* 534 U.S. at 450, 122 S.Ct. at 950. We hold that, under the plain meaning of title 49, section 14101(b)(1) of the United States Code, for a waiver to be effective, the agreement between the shipper and the carrier must communicate clearly and unmistakably or directly state that the rights or remedies in question are waived.

■ The only provision of the Contract that Celadon argues constitutes an express waiver of Titan's rights and remedies under the Carmack Amendment is Section 19 of the "Application of Rates" portion of the Contract, which reads:

19. All Mexican trans-border shipments are treated as either originating or terminating at the border point in the U.S. CELADON is not responsible for loss or damage occurring in Mexico. Mexican cargo insurance is available from customs broker.

Celadon states that the parties enjoyed a wide freedom of contract and that this court should not rewrite the terms of their

---

4. We apply federal rules of statutory construction to federal statutes based on considerations of comity and consistency. *See Omnibus Int'l, Inc. v. AT & T, Inc.,* 111 S.W.3d 818, 821–22 (Tex.App.-Dallas 2003, pet. granted, judgm't vacated w.r.m.) (applying federal rules of statutory construction); *Illinois Cent. Gulf Ry. Co. v. Price,* 539 So.2d 202, 205–06 (Ala.1988) (asserting that state courts, under doctrine of comity, defer to federal law, whether procedural or substantive, relating to federal claims); *Webster Bank v. Oakley,* 265 Conn. 539, 830 A.2d 139, 150 (2003) (holding that, under principles of comity and consistency, federal rules of statutory construction would be applied to federal statute in state court even though significantly different from state rules of statutory construction); *see also Webster Bank,* 830 A.2d at 163 (Zarella, J., concurring) (emphasizing need for both federal and state courts to apply a uniform approach to construing the same statute).

agreement. Celadon also cites Texas waiver law and argues that Titan impliedly waived the Carmack Amendment by its conduct in agreeing to Section 19, a provision inconsistent with the liability imposed under the Carmack Amendment. These arguments miss the point.

■ We are not determining the meaning of the Contract in the context of a breach-of-contract claim. Rather, we are viewing this provision in the context of Titan's statutory claim under federal law. Celadon asserts Titan has expressly waived its rights and remedies under the Carmack Amendment, and we must decide if the Contract contains an express waiver. We are not free to disregard the statutory requirement that the waiver be express, regardless of what we might otherwise conclude was the implied agreement between the parties. *See* U.S. CONST. art. VI, cl. 2; *American Cyanamid Co. v. Geye*, 79 S.W.3d 21, 23–24 (Tex.2002) (stating that, under Supremacy Clause of United States Constitution, state law is preempted and without effect if it conflicts with federal law). Congress's requirement that the waiver be express preempts any Texas law that would allow implied waiver by conduct or that would interpret the Contract to waive Celadon's liability for losses in Mexico without an express waiver of the Carmack Amendment in the Contract.

Finally, Celadon argues that, because it attempted to disclaim liability for loss or damage in Mexico in Section 19, and because this disclaimer would be inconsistent with the Carmack Amendment, Section 19 is an express waiver by Titan of its rights and remedies under the Carmack Amend-

ment. We disagree. Section 19 does not clearly and unmistakably communicate or directly state an intent to waive any of the protections of the Carmack Amendment. Under the plain meaning of "expressly," Titan and Celadon have not expressly waived any of these protections as required by 49 U.S.C. § 14101(b)(1).[5] *See Lehmann*, 39 S.W.3d at 192–93, 200, 205–06 (equating "express" with "states with unmistakable clarity" and with "clearly and unequivocally states"); BLACK'S LAW DICTIONARY 601 (7th ed.1999) (defining "expressly"). Absent an express waiver, Titan is not precluded from asserting its claim under the Carmack Amendment.

## B. Did the shipper agree to a reasonable limitation of the carrier's liability in the Contract?

■ In the second part of the argument under its sole issue, Celadon asserts that, under the Carmack Amendment, Section 19 limits its liability to zero for losses in Mexico. *See* 49 U.S.C. § 14706(c)(1)(A). The relevant part of the Carmack Amendment states that a carrier providing certain transportation services may "establish rates for the transportation of property [other than certain household goods] under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." *Id.* It is unclear whether the Carmack Amendment allows a carrier to "limit" its liability to zero. *See Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1031 (7th Cir.

---

**5.** Celadon and Titan both agree that Section 10 of the Contract establishes the liability provision of the Carmack Amendment as the controlling law for the Contract. Celadon claims that the alleged waiver of the Carmack Amendment in Section 19 takes precedence over Section 10. However, Section 10 is unconditional and not limited to transportation services in the United States. Therefore, Section 10 indicates that Titan did not intend to waive its rights and remedies under the Carmack Amendment regarding losses in Mexico.

2000) ("What carriers may not do is simply declare that they have no liability—for a value of $0 rarely will be 'reasonable under the circumstances surrounding the transportation' "). In any event, there is no evidence in the trial record that the carrier (Celadon) presented the shipper (Titan) with any range of established rates or potential liability levels from which to choose. Even if a carrier could limit its liability to zero under the Carmack Amendment, we conclude the record contains no evidence Celadon gave Titan a reasonable opportunity to choose between two or more levels of liability.[6] *See Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 838–43 (11th Cir.2003) (holding carrier did not limit its liability under Carmack Amendment because it did not give shipper a reasonable opportunity to choose between two or more levels of liability).

Celadon, however, makes the following assertions in its opening brief:

- Titan participated in the drafting of the Contract.
- Titan, after reviewing the application of rates, added specific provisions not outlined in the original agreement.
- In the "Addendum to Contract," Titan amended other aspects of the Contract but chose not to amend Section 19.
- Titan had an opportunity to negotiate different rates and liability.

- As an experienced shipper, Titan should have known that it is customary within the trucking industry for shippers to purchase Mexico liability insurance due to carriers' industry-wide refusal to incur Mexico liability in shipping contracts.
- In a letter dated August 6, 1999, Celadon forwarded to Titan the following documents: (1) a rate schedule containing the rates for the proposed traffic from Dillon, South Carolina and Lake City, South Carolina to Mexico; (2) two original copies of the contract carriage agreement; (3) the "Addendum to Contract;" (4) the application of rates; and (5) the Fuel Adjustment Program.
- Titan signed and returned these five documents on August 11, 1999.[7]

The only record references Celadon provides for these assertions are citations to different parts of the parties' summary-judgment evidence. The parties' summary-judgment affidavits and evidence were not admitted at trial. On appeal from a trial on the merits, we cannot consider summary-judgment evidence that was not admitted in evidence at trial. *Noble Exploration, Inc. v. Nixon Drilling Co., Inc.*, 794 S.W.2d 589, 592 (Tex.App.-Austin 1990, no writ); *City of Galveston v. Shu*, 607 S.W.2d 942, 944 (Tex.Civ.App.-Houston [1st Dist.] 1980, no writ). The evidentiary record created by the parties at trial consisted only of the Contract and

---

**6.** In the recodification of the Carmack Amendment that took effect on January 1, 1996, Congress did not change the language now contained in section 14706(c)(1)(A), and courts have held that a carrier limiting its liability under this section still must prove that it gave the shipper a reasonable opportunity to choose between two or more levels of liability. *See Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir.2003); *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*,

331 F.3d 834, 841–42 (11th Cir.2003); *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1063 (7th Cir.2000).

**7.** In its reply brief on appeal, Celadon seems to limit its arguments to the face of the Contract; however, we address these assertions from Celadon's opening brief because Celadon has not unequivocally withdrawn them.

the parties' stipulations; there was no testimony from any witnesses and no evidence to support any of the above factual assertions by Celadon. For example, there was no evidence at trial that Titan participated in the drafting of the Contract or insisted on the addition of the "Addendum to Contract." Nor was there any evidence of industry custom or practice or of any opportunity by Titan to negotiate different transportation rates. Because there was no evidence of these matters at trial, we cannot consider them on appeal as grounds for reversing the trial court's judgment.

Celadon also relies on *Siren, Inc. v. Estes Express Lines,* a Carmack Amendment case that involves significantly different facts. 249 F.3d 1268, 1268–74 (11th Cir.2001). In *Siren,* there was evidence the shipper was experienced and that the shipper knew the carrier had discounted the freight rate by more than sixty percent, even though the shipper was not a large or bulk shipper. *See id.* at 1269 n. 3. Furthermore, in *Siren,* there was evidence that the shipper itself had drafted the bill of lading containing the limitation-of-liability provision. *See id.* at 1273. When the *Siren* court spoke of the shipper preparing or drafting the bill of lading, it was speaking of creating the document; not completing it. *Sassy Doll Creations, Inc.,* 331 F.3d at 839. There was no evidence at trial that Titan created the bill of lading or any part of the Contract, and all of the documents contained in the Contract appear to be Celadon forms. We conclude that the *Siren* case does not apply to the facts of this case. *See id.* at 839–40.

Because the Contract did not contain a space in which Titan could declare a limitation-of-liability value, and because there was no evidence in the trial record that Celadon gave Titan a reasonable opportunity to choose between two or more levels of liability, we conclude that, under the Carmack Amendment, the Contract does not limit Celadon's liability to zero for losses in Mexico. *See id.* at 839–43 (holding limitation of liability was not effective under 49 U.S.C. § 14706(c)(1) because carrier created the documents and carrier did not give shipper a reasonable opportunity to choose between two or more levels of liability); *Tempel Steel Corp.,* 211 F.3d at 1031 (holding, in the alternative, that carrier's attempt to disclaim liability for losses in Mexico was not a valid limitation of liability under Carmack Amendment); *see also Rohner Gehrig Co., Inc. v. Tri–State Motor Transit,* 950 F.2d 1079, 1082–85 (5th Cir.1992) (en banc) (holding that carrier could not limit liability under Carmack Amendment because bill of lading did not comply with carrier's tariff by having space for shipper to declare value and in other particulars that resulted in shipper not having a reasonable opportunity to choose between two or more levels of liability).

Having rejected all of Celadon's arguments, we overrule its sole issue on appeal and affirm the trial court's judgment.