**D.M. DIAMOND CORPORATION,**
**Appellant,**

v.

**DUNBAR ARMORED, INC. and**
**P.C. Brown, Appellees.**

**No. 14–01–00531–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 23, 2003.

Rehearing En Banc Overruled
Feb. 12, 2004.

Karl Robert Schneider, Edward A. Mattingly, Houston, for appellants.

Kenya Latrese Scott, Dallas, Robert Lee Soza, San Antonio, for appellees.

Panel consists of Justices HUDSON, FOWLER and Senior Justice DUGGAN.[*]

## OPINION ON MOTION FOR REHEARING

LEE DUGGAN, JR., Senior Justice (Assigned).

Our opinion of June 12, 2003 is withdrawn, and this opinion is issued in its place.

Appellees' motion for rehearing urges that the recent opinion of the Texas Supreme Court in *Delta Airlines, Inc. v. Black,* 46 Tex. Sup.Ct. J. 872, 2003 WL 21468864 (June 26, 2003), speaks to the breach of contract claim asserted in appellant's first issue, and requires affirmance of the summary judgment. We disagree. The motion for rehearing is overruled; the summary judgment is reversed and the cause is remanded to the trial court.

This appeal centers on the law applicable to the loss of a package of diamonds shipped in interstate transport.

Appellant, D.M. Diamond Corporation ("DM"), a shipper, appeals a take-nothing summary judgment in favor of appellees, Dunbar Armored, Inc., an interstate carrier, and its employee, P.C. Brown (collectively, "Dunbar"). DM asserts nine issues on appeal.

Because we find the trial court erred in determining both (1) that the Carmack Amendment[1] to the Interstate Commerce Act ("the Carmack") governed the underlying shipment, rather than the Air Deregulation Act[2] ("the ADA"), and (2) that certain of DM's causes of action were barred by federal preemption, we reverse and remand.

## Background and Procedural History

DM is a wholesale diamond merchant. Dunbar is both a motor carrier and indirect air freight carrier. Since 1995, DM and Dunbar have operated together under a Service Contract whereby Dunbar provides pickup and overnight delivery of sealed packages containing precious stones

---

[*] Senior Justice Lee Duggan, Jr., sitting by assignment.

1. 49 U.S.C.A. §§ 13101–14914 (West 1997 & Supp.2002).

2. 49 U.S.C.A. §§ 40101–40120 (West 1997 & Supp.2002).

and other valuables for DM. Pursuant to the Service Contract, DM called on Dunbar to transport from Houston to New York City a package of diamonds that DM had received on consignment from merchants in New York City. A DM representative filled out a Dunbar air bill for delivery, including a declaration that the value of the package was $30,000. Brown, Dunbar's employee, picked up the package on February 19, 1999. On March 1, 1999, Dunbar invoiced DM for the delivery; DM paid Dunbar's invoice on March 16, 1999.

The New York City merchants' invoice to DM would have been due on or about May 19, 1999, if DM did not return the consigned diamonds. On May 26, 1999, the merchants faxed DM a request for payment. Unaware that Dunbar had not delivered the package, DM contacted Dunbar that same day or the next, and requested a copy of the signed air bill to show DM's consignor that the package had been delivered.

Over the next several months, Dunbar repeatedly assured DM that it had the signed air bill, that it was continuing to look for it, and that it was encountering delays in locating it due to a move of its storage warehouse. On June 25, 1999, Dunbar promised DM in writing that it would locate the signed air bill by June 28, 1999. However, Dunbar never produced the signed air bill.

On July 6, 1999, approximately five months after Dunbar picked up the package from DM for delivery, DM filed a formal written claim of loss with Dunbar. A little over a month later, on August 9, 1999, Dunbar denied DM's claim, invoking paragraph five of the Terms and Condi-

tions of the Service Contract as its basis. Paragraph five states:

> Within ten (10) days after discovery of any loss, but in no event more than thirty (30) days after delivery to Dunbar of the . . . valuable articles in connection with which such claim is asserted, [DM] shall give notice of claim in writing to Dunbar. If [DM] fails to comply with these conditions, [DM] agrees that all claims against Dunbar relating to the lost items are deemed waived and released.

(hereinafter the "30–Day Rule").

### DM's Lawsuit

DM sued Dunbar, alleging breach of contract, breach of warranty, violation of the DTPA[3], fraud, ambiguity/unreasonableness, estoppel/waiver as to the 30–Day Rule, and waiver of the Carmack's preemption of state law regulation and limitation of carrier's liability to shippers. Dunbar answered and filed a motion for summary judgment.

### Dunbar's Motion for Summary Judgment

Dunbar's motion for summary judgment asserted that: (1) the Carmack applies and preempts all of DM's state law claims; (2) DM's claim of loss is limited to the amount it declared as the value of the package contents[4]; (3) DM's claims are barred because DM failed to comply with the 30 Day Rule; and, in the alternative, (4) there is no evidence that Dunbar breached the Service Contract.

---

**3.** Tex. Bus. & Com.Code Ann. § 17.46 (Vernon 2002).

**4.** Although DM paid Dunbar a fee based on DM's claim of $30,000 in value, DM later

claimed that cash and other precious stones were included in the package, for a total value of $172,000.

### DM's Motion for Partial Summary Judgment

DM filed a motion for partial summary judgment, asserting: (1) a bailment and Dunbar's negligence; (2) Dunbar's breach of the contract, and, alternatively; (3) Dunbar's presumptive liability under the Carmack for picking up the package and failing to deliver it.

### DM's Response to Dunbar's Motion for Summary Judgment

DM also filed a response to Dunbar's motion for summary judgment, arguing that: (1) Dunbar waived the Carmack's protection from civil actions by its draftsmanship of section 13 of the Service Contract; (2) the 30–Day Rule "fails because it is ambiguous, oppressive and void" under both federal and state statutes because it conflicts with the Carmack's requirement that "[a] carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section . . . ;"[5] (3) the Carmack does not preempt pre-contract DTPA misrepresentations; (4) Dunbar was barred by estoppel and quasi-estoppel from relying on, and had waived its right to assert, the 30–Day Rule; (5) the Service Contract's 30–Day Rule is ambiguous and unreasonable because no provision is made for a loss discovered more than 30 days after Dunbar accepts goods for delivery; (6) the limitation of liability violates the DTPA; and (7) evidence exists to support DM's claims for breach of contract, DTPA, and bailment.

The trial court granted Dunbar's motion for summary judgment and denied DM's motion for partial summary judgment.

DM appeals only the trial court's granting of Dunbar's motion for summary judgment.

### Standard of Review

In order to prevail on summary judgment, a defendant/movant must disprove at least one essential element of each of the plaintiff's causes of action. *Riddick v. Quail Harbor Condo. Ass'n, Inc.,* 7 S.W.3d 663, 669 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

We review a summary judgment by applying the following well-established rules: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997).

In considering grounds for reversal on appeal, we are limited to those grounds expressly set forth in the summary judgment motions, answers, or other responses. TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) (plurality opinion)[6] (citing *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979)); *Clemons v. State Farm Fire and Cas. Co.,* 879 S.W.2d 385, 390 (Tex. App.-Houston [14th Dist.] 1994, no writ). In determining what grounds are express-

---

**5.** 49 U.S.C.A. § 14706(e)(1) (West 1997).

**6.** We recognize that plurality opinions are not binding on us, however, we have cited the plurality opinions that we find persuasive. *See Cincinnati Life Ins. Co. v. Cates,* 927

S.W.2d 623, 626 (Tex.1996); *Conner v. Conti-Carriers and Terminals, Inc.,* 944 S.W.2d 405, 413 (Tex.App.-Houston [14th Dist.] 1997, no writ).

ly presented, we may not rely on the appellate briefs or summary judgment evidence. *McConnell,* 858 S.W.2d at 341.

### Arguments and Authorities

DM asserts in its first issue that the trial court erred in granting summary judgment because it incorrectly relied on the Carmack Amendment, which regulates interstate transportation of goods by motor carrier, rather than the ADA, which governs the interstate transportation of goods by air carrier. DM argues that "[t]he Air Bill makes this an ADA case," and that with the ADA's 1978 deregulation of air transportation, interstate air carriers and shippers are now free to negotiate their own contracts, which may be interpreted and enforced under state law. DM argues that, while the ADA governs interstate air transportation, state law governs the interpretation and enforcement of contracts between shippers and carriers without federal preemption as long as state law does not enlarge or enhance the terms of the contract, citing *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).

Dunbar responds that: (1) DM failed to urge its ADA argument to the trial court, and is therefore barred from urging it on appeal; and (2) whether the Carmack or the ADA applies, Dunbar still prevails because federal law—either Carmack or ADA—governs Dunbar as an indirect air carrier, and preempts all state law causes of action between shippers and carriers, citing *Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922, 926–29 (5th Cir.1997).

▪ DM did, in fact, fail to present to the trial court in its partial summary judgment motion, answers or other responses the argument it now asserts on appeal, *i.e.,* that the ADA, and not the Carmack, applies to the Service Contract. However, while DM, as the nonmovant, must have expressly presented to the trial court any arguments for avoiding Dunbar's right to summary judgment, DM may, nevertheless, challenge on appeal the legal sufficiency of movant Dunbar's summary judgment proof. Tex.R.App. P. 33.1; *see McConnell,* 858 S.W.2d at 341 (citing *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979)). Accordingly, because DM contends the trial court erroneously applied the law, *i.e.,* relied on the Carmack instead of the ADA as the governing law, we interpret DM's first issue as an attack on the legal sufficiency of Dunbar's summary judgment proof on this ground. *See id.* We reject Dunbar's argument that DM's first issue is not preserved for review.

▪ Although Dunbar asserted in its motion for summary judgment that the Carmack applied, and DM failed to urge to the trial court that the ADA applied, both parties agreed at oral argument before this Court that the ADA governs the case. The agreement was proper; uncontradicted affidavit and deposition testimony accompanying both Dunbar's prevailing motion for summary judgment and DM's rejected motion for partial summary judgment showed that Dunbar treated DM's package as an air transportation package such that the ADA was the applicable federal regulatory measure.

Russell E. Daniels, Dunbar's Vice President—Administration and Risk Management, testified in deposition supporting Dunbar's response to DM's amended motion for partial summary judgment. Daniels testified that "[DM's] stones got on board the plane and got off the plane," and that "it got off the plane in New York."

Dunbar's driver-guard, Keith Brown, testified by affidavit offered by Dunbar that, after picking up DM's package at its Houston office, he "drove the bag contain-

ing DM's package along with other packages to the Ellington Airfield Airport in Houston, Texas, at approximately 8:30 p.m. that same night," where he "gave the packages to the aircraft's ground crew to be loaded," and "obtained the signature of the air courier's representatives."

When both parties move for summary judgment, as here, and the trial court grants one motion and denies the other, the reviewing court must consider the summary judgment evidence presented by both. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). Based on this summary judgment evidence provided by Dunbar, we hold that DM has shown that its package was, in fact, shipped by air, such that the ADA, and not the Carmack Amendment, governs.

Dunbar's second argument opposing DM's first issue urges that, although the ADA and not the Carmack is the applicable federal law, DM's state law causes of action are still barred by preemption; DM disagrees.

### The Carmack Amendment, the ADA, and Preemption of DM's State Law Claims

#### The Carmack Amendment

The effect of the 1906 Carmack Amendment to the Interstate Commerce Act of 1887 was for federal law to preempt state laws as to rights and liabilities arising from goods lost or damaged in interstate transport. *See Brown v. Am. Transfer and Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980); *see also Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 876 (5th Cir.1996); *Moffit v. Bekins Van Lines*

*Co.*, 6 F.3d 305, 306 (5th Cir.1993). Before passage of the Carmack Amendment,

> [t]he Federal courts sitting in the various states were following the local rule, a carrier being held liable in one court when, under the same state of facts, he would be exempt from liability in another. Hence this branch of interstate commerce was being subject to such a diversity of legislative and judicial holding[s] that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or a carrier whose lines were extensive, to know, without considerable investigation and trouble, and even then often times with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another. The [Carmack] has made an end to this diversity; for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transaction.

*Moffit*, 6 F.3d at 306 (quoting *Adams Express Co. v. Croninger*, 226 U.S. 491, 505, 33 S.Ct. 148, 57 L.Ed. 314 (1913)).

State law claims that are preempted by the Carmack include the tort of outrage, intentional and negligent infliction of emotional distress, breach of contract, breach of implied warranty, breach of express warranty, violation of the Texas DTPA, slander, misrepresentation, fraud, negligence and gross negligence. *Moffit*, 6 F.3d at 305–07.

However, the Texas Supreme Court has held that the Carmack does not preempt a DTPA claim based on a misrepresentation made prior to the contract. *Brown*, 601 S.W.2d at 939.[7]

---

7. We are aware that many federal courts have held to the contrary. *See Moffit*, 6 F.3d at 305–07 (holding a claim of a violation of the Texas DTPA is preempted by the Carmack Amendment); *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 288 (7th Cir.1997) (Carmack Amendment preempts a claim under the Illinois Consumer Fraud and Deceptive

### The Airline Deregulatory Act ("the ADA")

"In 1978, Congress enacted [the ADA], 92 stat. 1705, which largely deregulated domestic air transport." *Wolens*, 513 U.S. at 222–23, 115 S.Ct. 817. By doing so, Congress sought to create the maximum reliance on competitive market forces to create efficiency, innovation and low prices as well as variety and quality of air transportation service. *Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 278 (Tex. 1996). To prevent the States from undoing federal deregulation with regulation of their own, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the ADA contained a preemption clause which read, in pertinent part:

"[N]o State ... shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier.... 49 U.S.C.App. § 1305(a)(1)."

*Wolens*, 513 U.S. at 222–23, 115 S.Ct. 817.

Dunbar argues that this preemption clause bars state law enforcement of causes of actions, such as DM would have the state court enforce here, that relate to Dunbar's services. We disagree.

■ *Wolens* held that the ADA's preemption "bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves." *Id.* at 222, 115 S.Ct. 817. In determining whether a breach of contract action survives ADA preemption, a court is restricted to enforcing the actual terms of the contracting parties' bargain "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 232–33, 115 S.Ct. 817.

■ Thus, action in the courts to enforce state law policy statutes and remedies, such as consumer protection/DTPA measures ("what the state dictates") is barred by preemption. *Id.* at 233, 115 S.Ct. 817. On the other hand, "what the airline itself undertakes" is different. "[T]he ADA permits state-law-based court adjudication of routine breach-of-contract claims...." *Id.* A breach of contract action between a shipper and an air carrier therefore survives if the court's concern is restricted to the parties' bargain. *Id.* 232–33, 115 S.Ct. 817. Consistently, the Texas Supreme Court held in *Kiefer*, 920 S.W.2d 274, that the ADA does not preempt breach of contract or personal injury negligence claims, but does preempt DTPA claims, *id.* at 278, reasoning that common law negligence and breach of contract claims do not impair federal regulation. *Id.* at 282–83.

In its motion for rehearing, Dunbar cites the recent decision in *Delta Air Lines, Inc. v. Black*, 46 Tex. Sup.Ct. J. 872, 2003 WL 21468864, as determining that Diamond's breach of contract claim pertains to the "services" of an air carrier and that the ADA therefore preempts the claim.

*Black* involved a passenger's breach of contract claim based upon an airline's alleged refusal to honor a confirmed seat

Business Practices Act); *Rini v. United Van Lines, Inc.* 104 F.3d 502, 506 (1st Cir.1997) (Carmack Amendment preempts a claim for unfair and deceptive acts under Massachusetts state law). However, these federal cases are not authoritative because we are not controlled by decisions of the lower federal courts, including the Fifth Circuit. *See Pen-rod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993). On questions of federal common law, we are bound to follow only the decisions of the United States Supreme Court and Texas Supreme Court. *Id.* While we recognize that federal courts have superior expertise in federal law, their decisions are persuasive authority only. *Id.*

reservation. Following a two-part analysis, *Black* held that the passenger's breach of contract claim constituted, within the ban of the ADA's preemption clause, a claim that both (1) involved airline "services," and (2) constituted enforcement of a state law that regulated air carriers.

The Texas Supreme Court noted in *Black* that "[t]he ADA does not specify, and the United States Supreme Court has not determined, what activities constitute airline services." *Id.* at 876. *Black* observed that the passenger's claim related to the airline's seating and boarding policies, and that "most courts generally agree that state law claims involving seating and boarding procedures relate to [airline] services [within the ADA's preemption clause]" (citing numerous U.S. circuit and district court opinions). *Id.* at 877.

As to the breach of contract suit being an enforcement of state law regulating air services, *Black* noted that the U.S. Department of Transportation ("DOT"), acting under regulatory authority conferred by Congress in the ADA, had "promulgated comprehensive regulations interpreting the ADA." *Id.* at 878. Specifically, *Black* noted that under 14 C.F.R. §§ 250.1–.9, DOT is permitted (1) to regulate "oversales" in air carrier service, (2) to determine compensation due to passengers "involuntarily denied boarding caused by an oversold flight, *id.* § 250.5," and (3) to establish regulations determining when a passenger is involuntarily denied boarding, citing 14 C.F.R. § 250.9. *Black* further held that the parties' contract incorporated DOT regulations about denied boarding compensation; that Black sought to enlarge Delta's obligation to him by ignoring DOT regulations and asserting contractual claims in court; that Black was not "involuntarily denied boarding" under DOT rules and exceptions; and that Black therefore could not "forego the remedies provided by the DOT regulations and seek damages in court." *Id.* at 878.

The case before us is readily distinguishable. The Service Contract called for Dunbar to pick up DM's package, to deliver it to the air carrier, and to receive and deliver the package to DM's consignee when the air carrier arrived at its destination. No cited case shows that the conduct of the parties was an airline "service" preempted under the ADA. Nothing in the summary judgment evidence indicates either a conflict between DM's breach of contract contentions and an existing federal regulation, or a state-imposed attempt at regulation of an air carrier, or anything more than "court enforcement of contract terms set by the parties themselves." *Wolens*, 513 U.S. at 222, 115 S.Ct. 817.

■ We reject Dunbar's argument that DM's breach of contract claim is barred by ADA preemption. We sustain DM's first issue.

Issues two through six assert matters related to the Service Contract's 30–Day Rule and urge contract principles that DM argues excuse timely notice of its loss claim. DM contends the trial court erred in granting summary judgment because:

> (1) Dunbar is estopped from relying on the 30–Day Rule (Issue two);
>
> (2) Dunbar waived the 30–Day Rule (Issue three);
>
> (3) the 30–Day Rule is ambiguous and oppressive (Issue four);
>
> (4) DM's failure to give notice was excused due to impossibility or impracticability of performance (Issue five); and
>
> (5) the 30–Day Rule was not conspicuous within the Service Contract (Issue six).

As it urged in Issue one, Dunbar also urges as to Issues four, five, six and nine that DM failed to expressly present to the

trial court by summary judgment motion, answer, or other response, the arguments it now asserts on appeal. DM disputes each of Dunbar's complaints. We have examined the pleadings filed and have determined Dunbar is in error as to Issues four and five, but correct as to Issue six. DM did mention in its response to Dunbar's motion for summary judgment its arguments that the 30–Day Rule is oppressive (Issue four), and that it would be impossible to comply with the 30–Day Rule's notice requirement when the loss was discovered more than 30 days after the package was delivered to Dunbar (Issue five). We therefore reject these complaints by Dunbar.

■ However, as to Issue six, our search of the record reveals—and DM fails to direct us to any record reference to the contrary in its Reply Brief—that DM failed to expressly present to the trial court by written motion, answer, or response its argument that the 30–Day Rule was not conspicuous. Accordingly, we cannot consider this argument on appeal as a ground for reversal. *See McConnell,* 858 S.W.2d at 339–41. Issue six is overruled.

In sustaining Issue one, we held that: (1) the ADA governs interstate air carrier shipments; and (2) shipper DM's breach of contract claims against air carrier Dunbar are not barred by ADA preemption. Accordingly, we remand Issues two, three, four and five for the trial court's determination.

DM explains in its appellate brief that Issues seven and eight focus on "no preemption of DTPA." DM asserts in its Issue seven that the trial court erred in granting summary judgment because neither the Carmack nor the ADA preempt DM's state law claims because Dunbar waived preemption by inserting Section 13 into the Service Contract, thereby reviving state law claims.

Section 13 of the terms and conditions of the Service Contract provides that:

"[Dunbar] accepts the duties and responsibilities of this Agreement only with the acceptance of and compliance with the conditions stated above.... Any claims made by [DM] must be subject to these conditions, whether filed under contract, tort, warranty, strict liability barement, conversion, or any other theory of liability."

■ We held in Issue one that the Carmack was not the applicable governing law. Our concern is, therefore, with the ADA's preemptive effect. However, DM failed to expressly present to the trial court by written motion, answer, or other response that the ADA does not preempt DM's state law claims. *See McConnell,* 858 S.W.2d at 339–41. DM therefore waived these arguments, and we may not consider them on appeal as grounds for reversal. Issue seven is overruled.

■ DM asserts in its Issue eight that the trial court erred in granting summary judgment because neither the Carmack nor the ADA preempts DM's claims for pre-contract DTPA claims. We determined in Issue one that the ADA, and not the Carmack, is the applicable governing law, and that it preempts and bars consumer protection/DTPA state law remedies, considering them to be state actions or policies that enlarge or enhance the actual terms of the contracting parties' bargain. *Wolens,* 513 U.S. at 222–23, 115 S.Ct. 817; *Kiefer,* 920 S.W.2d at 282–83. Because the ADA preempts pre-contract DTPA claims, we overrule Issue eight.

DM asserts in Issue nine that the trial court erred in granting summary judgment because there is evidence to support DM's breach of contract, bailment, and DTPA causes of action. As we stated in Issues one and eight, the ADA preempts

DM's DTPA claims. *Wolens,* 513 U.S. at 232–33, 115 S.Ct. 817; *Kiefer* 920 S.W.2d at 282–83. Accordingly, Issue nine is overruled as to DM's DTPA claims. As with Issues two through five, DM's Issue nine breach of contract and bailment claims are remanded to the trial court for its consideration, applying the ADA as the applicable law.

Dunbar's summary judgment is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion.