Motion for Rehearing Overruled; Affirmed; Opinion of October 23, 2003,
Withdrawn and Substitute Opinion filed February 12, 200















Motion for
Rehearing Overruled; Affirmed; Opinion of October 23, 2003, Withdrawn and Substitute Opinion filed February 12, 2004.

 

 

In The

 

Fourteenth Court
of Appeals

____________

 

NO. 14-02-00906-CV

____________

 

CELADON TRUCKING SERVICES, INC., Appellant

 

V.

 

TITAN TEXTILE COMPANY, INC., Appellee

 

______________________________________________

 

On Appeal from the County Civil Court
at Law Number 1

Harris County, Texas

Trial Court
Cause No. 750,247

 

______________________________________________

 

S U B S T I
T U T E   O P I N I O N

            We overrule the motion for rehearing
filed by appellant Celadon Trucking Services, Inc. We withdraw the opinion
issued in this case on October
 23, 2003, and we issue the following opinion in its
place.  

            This is a case between a shipper and
a carrier under the Carmack Amendment, a federal transportation
statute that creates a uniform federal law regarding the liability of
interstate carriers for lost or damaged goods.[1]  We must decide whether a provision in the
parties’ contract constitutes an express waiver of protections afforded the
shipper under this statute and, if not, whether the shipper agreed to limit the
carrier’s liability for losses.  The
carrier, appellant Celadon Trucking Services, Inc., appeals the trial court’s
judgment against it and in favor of the shipper, appellee
Titan Textile Company, Inc., on Titan’s claim under the statute.  We find no express waiver of the statute’s
provisions in the parties’ contract and no limitation of the carrier’s
liability, and we affirm the trial court’s judgment on the shipper’s statutory
claim. 

                              I.  Factual and Procedural Background

            Titan, the shipper, brought this
suit against Celadon, the carrier, under the Carmack
Amendment to recover damages for the loss of a cargo of synthetic yarn owned by
Titan and lost while being transported from Dillon, South
 Carolina to Mexico
 City, Mexico.  Both parties moved for summary judgment.  The trial court did not rule on the motions
for summary judgment and instead called the case to trial.  

            At trial, Titan introduced
Plaintiff’s Exhibit 1, containing the transportation contract between the
parties (hereinafter “Contract”), and it was admitted into evidence without
objection.  Counsel for both parties then
stipulated to the following facts:

!         Titan
and Celadon entered into the Contract.

!         On February 10, 2000, Celadon issued a through
bill of lading[2] from
Dillon, South Carolina to Mexico City, Mexico, covering 292 cases of yarn
owned by Titan.

!         Celadon
received the shipment of yarn in good order and condition.

!         On
or about February 29, 2000, the shipment of yarn was
stolen in Mexico and not recovered.

!         The
value of the shipment of yarn was $32,795.78.

!         Titan
has established a prima facie case on liability against Celadon under the Carmack Amendment. 

 

            Celadon offered no evidence;
instead, Celadon argued Titan had expressly waived the protections of the Carmack Amendment as to transportation in Mexico, or in the
alternative, agreed to limit Celadon’s liability to
zero for losses in Mexico under
Section 19 of the Contract.  The trial
court rendered judgment in favor of Titan for the full amount of its claim plus
prejudgment interest, postjudgment interest, and
costs of court.  The trial court did not
issue findings of fact or conclusions of law. 

            On appeal, Celadon asserts that,
even though the parties did not comply with the requirements of Texas Rule of
Civil Procedure 263, entitled “Agreed Case,” we should treat this case as one
involving an agreed statement of facts under this rule because the record
indicates that the trial court heard the case on stipulated facts.  See
Tex. R. Civ.
P. 263; State Farm Lloyds v.
Kessler, 932 S.W.2d 732, 735 (Tex. App.—Fort Worth 1996, writ
denied) (holding that appellate court may treat appeal as involving agreed
statement of facts, despite failure to comply with Rule 263, if the record
indicates that the trial court heard the case on stipulated facts).  Titan disagrees.

                                                    II.  Standard of Review

            If we were to treat this case as an
appeal involving an agreed statement of facts under Rule 263, as Celadon urges,
then the standard of review would be whether the trial court properly applied
the law to the agreed facts, and this court would not presume any findings in
favor of the trial court’s judgment.  See State
Farm Lloyds, 932 S.W.2d at 735–36. 
Titan claims that, in the absence of findings of fact and conclusions of
law, this court must imply that the trial court made all the findings necessary
to support its judgment.  See Worford v.
Stamper, 801 S.W.2d 108, 109 (Tex.
1990).  We have found no cases from
either the Texas Supreme Court or this court that address this Rule 263
issue.  However, we can resolve this case
based on the stipulations and uncontroverted evidence
at trial, the unambiguous Contract, and the unambiguous statutes involved,
without relying on any implied findings to support the trial court’s
judgment.  Therefore, we need not address
this issue regarding Rule 263, because it does not affect the determination of
this appeal.  

                                                    III.  Issues and Analysis

A.        Did the shipper expressly waive the protections of the Carmack Amendment in the Contract?

 

            The Carmack
Amendment governs the liability of truckers and other carriers that transport
interstate shipments or shipments from the United
 States to adjacent foreign countries,
such as Mexico. It is a
uniform system of carrier liability and represents the shipper’s exclusive
remedy against a carrier for goods lost or damaged during shipment.[3]  See
Hoskins v. Bekins Van Lines, 343 F.3d 769, 773–78
(5th Cir. 2003); D.M. Diamond Corp. v. Dunbar Armored, Inc., — S.W.3d —, —, No. 14-01-00531-CV, 2003 WL
22176094, at *4–*5 (Tex. App.—Houston [14th
Dist.] Sept. 23, 2003, no pet.
h.).  The statute provides protections
for shippers; however, these protections can be waived.  See
49 U.S.C. § 14101(b)(1).

            In the first part of its argument
under its sole issue on appeal, Celadon asserts that, in Section 19 of the
Contract, Titan expressly waived all rights it had under the Carmack Amendment to recover against Celadon based on the
transportation of goods under the Contract in Mexico.  Celadon bases its argument on the following
statutory provision:

If the shipper and carrier, in writing, expressly waive any or all
rights and remedies under this part [the part of the United States Code that
includes the Carmack Amendment] for the transportation
covered by the contract, the transportation provided under the contract shall
not be subject to the waived rights and remedies and may not be subsequently
challenged on the ground that it violates the waived rights and remedies.

49 U.S.C. §
14101(b)(1).

            We review the trial court’s
interpretation of applicable statutes de
novo.  Johnson v. City of Fort Worth, 774 S.W.2d 653, 655–56 (Tex.
1989).  In construing this statute, we
look first at the language of the entire statute.[4]  See
Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450,
122 S. Ct. 941, 950, 151 L. Ed. 2d 908
(2002).   Based on this review of the
statutory language, we determine whether the statute has a plain and
unambiguous meaning regarding the issue before us.  See id.  The inquiry stops if the statutory language
is unambiguous and “the statutory scheme is coherent and consistent.”  Id. (quotations omitted). 
We read the words of a statute in their context, taking note of their
place in the overall statutory scheme.  Food and Drug Admin. v. Brown &
Williamson Tobacco Corp., 529 U.S. 120, 133,
120 S. Ct. 1291, 1301, 146 L. Ed. 2d 121
(2000).

            The parties have not cited, and we
have not found, cases from Texas or any
other jurisdiction applying the above statutory waiver provision.  The statute specifically requires that the
parties “expressly waive” any or all of the rights and remedies in
question.  See 49 U.S.C. § 14101(b)(1). 
The main issue in this appeal is whether the Contract contains a
provision that expressly waives Titan’s rights and remedies under the Carmack Amendment relating to the transportation of goods
under the Contract in Mexico.  Titan and Celadon both assert the Contract
has a plain and unambiguous meaning, and we agree.  The plain meaning of “expressly” is “clearly and
unmistakably communicated; directly stated.” 
Black’s Law Dictionary 601
(7th ed. 1999); see also Lehmann v. Har-Con Corp., 39
S.W.3d 191, 192–93, 200, 205–06 (Tex. 2001) (equating “express” with “states
with unmistakable clarity” and with “clearly and unequivocally states”).  Because the statutory scheme is coherent and
consistent, we give effect to the plain and unambiguous statutory language as a
matter of law.  See Barnhart, 534 U.S. at 450,
122 S. Ct. at 950.  We hold that, under the plain meaning of
title 49, section 14101(b)(1) of the United States Code, for a waiver to be
effective, the agreement between the shipper and the carrier must communicate
clearly and unmistakably or directly state that the rights or remedies in
question are waived.

            The only provision of the Contract
that Celadon argues constitutes an express waiver of Titan’s rights and
remedies under the Carmack Amendment is Section 19 of
the “Application of Rates” portion of the Contract, which reads:

19.       All Mexican trans-border shipments are
treated as either originating or terminating at the border point in the U.S.
CELADON is not responsible for loss or damage occurring in Mexico.  Mexican cargo insurance is available from
customs broker.  

            Celadon states that the parties
enjoyed a wide freedom of contract and that this court should not rewrite the
terms of their agreement.  Celadon also
cites Texas waiver law
and argues that Titan impliedly waived the Carmack
Amendment by its conduct in agreeing to Section 19, a provision inconsistent
with the liability imposed under the Carmack
Amendment.  These arguments miss the
point.  

            We are not determining the meaning
of the Contract in the context of a breach-of-contract claim.  Rather, we are viewing this provision in the
context of Titan’s statutory claim under federal law.  Celadon asserts Titan has expressly waived
its rights and remedies under the Carmack Amendment,
and we must decide if the Contract contains an express waiver.  We are not free to disregard the statutory
requirement that the waiver be express, regardless of what we might otherwise
conclude was the implied agreement between the parties.  See
U.S. Const. art. VI, cl.
2; American Cyanamid Co. v. Geye, 79 S.W.3d 21, 23–24 (Tex. 2002)
(stating that, under Supremacy Clause of United States Constitution, state law
is preempted and without effect if it conflicts with federal law).  Congress’s requirement that the waiver be
express preempts any Texas law that
would allow implied waiver by conduct or that would interpret the Contract to
waive Celadon’s liability for losses in Mexico without an
express waiver of the Carmack Amendment in the
Contract. 

            Finally, Celadon argues that,
because it attempted to disclaim liability for loss or damage in Mexico in Section
19, and because this disclaimer would be inconsistent with the Carmack Amendment, Section 19 is an express waiver by Titan
of its rights and remedies under the Carmack
Amendment.  We disagree.  Section 19 does not clearly and unmistakably
communicate or directly state an intent to waive any of the protections of the Carmack Amendment. 
Under the plain meaning of “expressly,” Titan and Celadon have not
expressly waived any of these protections as required by 49 U.S.C. §
14101(b)(1).[5]  See
Lehmann, 39
S.W.3d at 192–93, 200, 205–06 (equating “express” with “states with
unmistakable clarity” and with “clearly and unequivocally states”); Black’s Law Dictionary 601 (7th ed.
1999) (defining “expressly”).  Absent an
express waiver, Titan is not precluded from asserting its claim under the Carmack Amendment.

B.        Did the shipper agree to a reasonable
limitation of the carrier’s liability in the Contract?

 

            In the second part of the argument
under its sole issue, Celadon asserts that, under the Carmack
Amendment, Section 19 limits its liability to zero for losses in Mexico.  See
49 U.S.C. § 14706(c)(1)(A).  The relevant
part of the Carmack Amendment states that a carrier
providing certain transportation services may “establish rates for the
transportation of property [other than certain household goods] under which the
liability of the carrier for such property is limited to a value established by
written or electronic declaration of the shipper or by written agreement
between the carrier and shipper if that value would be reasonable under the
circumstances surrounding the transportation.” 
Id.  It is unclear whether the Carmack
Amendment allows a carrier to “limit” its liability to zero.  See Tempel Steel Corp. v. Landstar Inway, Inc., 211 F.3d 1029, 1031 (7th Cir. 2000) (“What
carriers may not do is simply declare that they have no liability–for a value
of $0 rarely will be ‘reasonable under the circumstances surrounding the
transportation’”).  In any event, there
is no evidence in the trial record that the carrier (Celadon) presented the shipper
(Titan) with any range of established rates or potential liability levels from
which to choose.  Even if a carrier could
limit its liability to zero under the Carmack
Amendment, we conclude the record contains no evidence Celadon gave Titan a
reasonable opportunity to choose between two or more levels of liability.[6]  See
Sassy Doll Creations, Inc. v. Watkins
Motor Lines, Inc., 331 F.3d 834, 838–43 (11th Cir. 2003) (holding carrier
did not limit its liability under Carmack Amendment
because it did not give shipper a reasonable opportunity to choose between two
or more levels of liability).  

            Celadon, however, makes the
following assertions in its opening brief:

!         Titan
participated in the drafting of the Contract.

!         Titan, after reviewing the application of rates, added
specific provisions not outlined in the original agreement.

!         In the “Addendum to Contract,” Titan amended other aspects
of the Contract but chose not to amend Section 19.

!         Titan
had an opportunity to negotiate different rates and liability.  

!         As an experienced shipper, Titan should have known that it
is customary within the trucking industry for shippers to purchase Mexico liability insurance due to
carriers’ industry-wide refusal to incur Mexico liability in shipping
contracts.

!         In a letter dated August 6, 1999, Celadon forwarded to Titan
the following documents: (1) a rate schedule containing the rates for the
proposed traffic from Dillon, South Carolina and Lake City, South Carolina to
Mexico; (2) two original copies of the contract carriage agreement; (3) the
“Addendum to Contract;” (4) the application of rates; and (5) the Fuel
Adjustment Program.

!         Titan signed and returned these five
documents on August 11,
 1999.[7]

            The only record references Celadon
provides for these assertions are citations to different parts of the parties’
summary-judgment evidence.  The parties’
summary-judgment affidavits and evidence were not admitted at trial.  On appeal from a trial on the merits, we
cannot consider summary-judgment evidence that was not admitted in evidence at
trial.  Noble Exploration, Inc. v. Nixon Drilling Co., Inc., 794 S.W.2d
589, 592 (Tex. App.—Austin 1990, no writ); City
of Galveston v. Shu, 607 S.W.2d 942, 944 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ).  The evidentiary record created by the parties
at trial consisted only of the Contract and the parties’ stipulations; there
was no testimony from any witnesses and no evidence to support any of the above
factual assertions by Celadon.  For
example, there was no evidence at trial that Titan participated in the drafting
of the Contract or insisted on the addition of the “Addendum to Contract.”  Nor was there any evidence of industry custom
or practice or of any opportunity by Titan to negotiate different
transportation rates.  Because there was
no evidence of these matters at trial, we cannot consider them on appeal as
grounds for reversing the trial court’s judgment. 

            Celadon also relies on Siren, Inc. v. Estes Express Lines, a Carmack Amendment case that involves significantly
different facts.  249 F.3d 1268, 1268–74
(11th Cir. 2001).  In Siren, there was evidence the shipper
was experienced and that the shipper knew the carrier had discounted the
freight rate by more than sixty percent, even though the shipper was not a large
or bulk shipper.  See id. at 1269 n.3. 
Furthermore, in Siren, there
was evidence that the shipper itself had drafted the bill of lading containing
the limitation-of-liability provision.  See id. at 1273.  When the Siren
court spoke of the shipper preparing or drafting the bill of lading, it was
speaking of creating the document, not completing it.  Sassy
Doll Creations, Inc., 331 F.3d at 839. 
There was no evidence at trial that Titan created the bill of lading or
any part of the Contract, and all of the documents contained in the Contract
appear to be Celadon forms.  We conclude
that the Siren case does not apply to
the facts of this case.  See id. at 839–40.  

            Because the Contract did not contain
a space in which Titan could declare a limitation-of-liability value, and
because there was no evidence in the trial record that Celadon gave Titan a
reasonable opportunity to choose between two or more levels of liability, we
conclude that, under the Carmack Amendment, the
Contract does not limit Celadon’s liability to zero
for losses in Mexico.  See id. at 839–43 (holding limitation of
liability was not effective under 49 U.S.C. § 14706(c)(1) because carrier
created the documents and carrier did not give shipper a reasonable opportunity
to choose between two or more levels of liability); Tempel Steel Corp., 211 F.3d at 1031 (holding, in the alternative, that
carrier’s attempt to disclaim liability for losses in Mexico was not a valid
limitation of liability under Carmack Amendment); see also Rohner Gehrig Co., Inc. v. Tri-State Motor Transit, 950 F.2d
1079, 1082–85 (5th Cir. 1992) (en banc) (holding that carrier could not limit
liability under Carmack Amendment because bill of
lading did not comply with carrier’s tariff by having space for shipper to
declare value and in other particulars that resulted in shipper not having a
reasonable opportunity to choose between two or more levels of liability).  

            Having rejected all of Celadon’s arguments, we overrule its sole issue on appeal
and affirm the trial court’s judgment.

 

                                                                        /s/        Kem Thompson Frost

                                                                                    Justice

 

Judgment rendered and Substitute Opinion filed February 12, 2004.

 

Panel
consists of Justices Yates, Hudson, and Frost.

 

 











            [1]  See
49 U.S.C. § 14706.





            [2]  A “through bill of lading” is a contract of
carriage that governs the entire transport of cargo from its origin to its
destination.  Indem. Ins. Co. of N. Am. v. Hanjin Shipping Co.,
206 F. Supp. 2d 927, 931 (N.D. Ill. 2002).  

 





            [3]  There is a conflict between some federal
decisions and Texas Supreme Court precedent regarding whether the Carmack Amendment preempts a claim under the Texas
Deceptive Trade Practices Act based on a misrepresentation alleged to have been
made before the parties entered into the contract.  See
D.M. Diamond Corp. v. Dunbar Armored, Inc., — S.W.3d —, —, No. 14-01-00531,
2003 WL 22176094, at *5 n.7 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, no pet. h.). 
This issue is not before us in this case.





            [4]  We apply federal rules of statutory
construction to federal statutes based on considerations of comity and
consistency.  See Omnibus Int’l, Inc. v. AT&T, Inc., 111 S.W.3d 818, 821–22
(Tex. App.—Dallas 2003, pet. granted, judgm’t vacated
w.r.m.) (applying federal rules of statutory
construction); Illinois Cent. Gulf Ry. Co. v. Price, 539 So.2d 202, 205–06
(Ala. 1988) (asserting that state courts, under doctrine of comity, defer to
federal law, whether procedural or substantive, relating to federal claims); Webster Bank v. Oakley, 830 A.2d 139,
150 (Conn. 2003) (holding that, under principles of comity and consistency,
federal rules of statutory construction would be applied to federal statute in
state court even though significantly different from state rules of statutory
construction); see also Webster Bank,
830 A.2d at 163 (Zarella, J., concurring)
(emphasizing need for both federal and state courts to apply a uniform approach
to construing the same statute).     





            [5]  Celadon and Titan both agree that Section 10
of the Contract establishes the liability provision of the Carmack
Amendment as the controlling law for the Contract.  Celadon claims that the alleged waiver of the
Carmack Amendment in Section 19 takes precedence over
Section 10.  However, Section 10 is
unconditional and not limited to transportation services in the United States.  Therefore, Section 10 indicates that Titan
did not intend to waive its rights and remedies under the Carmack
Amendment regarding losses in Mexico.  





            [6]  In the recodification
of the Carmack Amendment that took effect on January
1, 1996, Congress did not change the language now contained in section
14706(c)(1)(A), and courts have held that a carrier limiting its liability
under this section still must prove that it gave the shipper a reasonable
opportunity to choose between two or more levels of liability.  See
Hoskins v. Bekins Van Lines, 343 F.3d 769, 778
(5th Cir. 2003); Sassy Doll Creations,
Inc. v. Watkins Motor Lines, Inc., 331 F.3d 834, 841–42 (11th Cir. 2003); Opp v. Wheaton Van Lines, Inc., 231 F.3d
1060, 1063 (7th Cir. 2000).





            [7]  In its reply brief on appeal, Celadon seems
to limit its arguments to the face of the Contract; however, we address these
assertions from Celadon’s opening brief because
Celadon has not unequivocally withdrawn them.