**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 10, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-21236

EUGENIA T. HOSKINS,

Plaintiff-Appellant,

versus

BEKINS VAN LINES,
aka Bekins Van Lines Co.,
aka Geologistics Americas, Inc.;
GEOLOGISTICS AMERICAS, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Eugenia T. Hoskins ("Hoskins") sued Bekins Van Lines ("Bekins"), a common carrier, for

damages stemming from the loss or damage to her personal belongings as a result of a move from

Texas to Virginia. The district court granted summary judgment to Bekins. For the following

reasons, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 1998, Hoskins contracted with Bekins to move and temporarily store her personal belongings in a storage facility in Houston, Texas, then later to ship her belongings to her new residence in Keswick, Virginia. At the time of delivery in Virginia, Hoskins noticed that many items were damaged or missing, including furniture and antique silverware. Hoskins filed claims with Bekins for the missing or damaged items. Bekins paid Hoskins $70,000 on her claims.

Hoskins contended that she was not fully compensated.[1] She filed suit in Texas state court. Hoskins' state court petition alleged negligence, breach of contract, and violation of the Texas Deceptive Trade Practices Act. Among other things, Hoskins sought damages, including exemplary damages, and attorney's fees. Hoskins' state court petition asserted no federal claims.

On March 9, 2001, Bekins removed the case to federal district court based on 28 U.S.C. §§ 1331 and 1337 and 49 U.S.C. § 14706 (the "Carmack Amendment" to the Interstate Commerce Act). The same day, Bekins filed a motion to dismiss Hoskins' state law claims based on federal pre-emption. On July 9, 2001, the district court ordered that Hoskins' state law claims were pre-empted by the Carmack Amendment. The district court further ordered that "Hoskins may not amend her complaint to add the Carmack Amendment expressly because the facts she has pleaded suffice." Bekins then filed a motion for summary judgment. On October 30, 2001, the district court issued a take nothing judgment. Hoskins appeals, arguing that (1) the district court lacked subject matter jurisdiction because this case does not arise under the Carmack Amendment, or any other provision of federal law, and (2) the district court erred in granting summary judgment to Bekins because

---

[1] Hoskins asserts that she is entitled to at least an additional $108,437 in damages for repair and replacement of the damaged or missing goods.

2

Hoskins did not sign or otherwise assent to the provisions in the bill of lading before the carriage of her property, Hoskins was not provided a meaningful opportunity to choose between liability limits, and a genuine issue of material fact exists concerning whether the loss was attributable to theft by Bekins' employees or agents. For the following reasons, we find that the district court had subject matter jurisdiction, and we AFFIRM its grant of summary judgment to Bekins.

DISCUSSION

I. Subject Matter Jurisdiction

"We exercise plenary, de novo review of a district court's assumption of subject matter jurisdiction." Local 1351 Int'l Longshoremens Ass'n v. Sea-Land Serv., Inc., 214 F.3d 566, 569 (5th Cir. 2000).

Hoskins argues that the district court lacked subject matter jurisdiction over this controversy because her claim does not arise under the Carmack Amendment, or any other provision of federal law. Bekins contends that Hoskins' state court petition gives rise to federal question jurisdiction. Bekins removed the case to federal district court pursuant to 28 U.S.C. § 1441, based on 28 U.S.C. §§ 1331 and 1337, and the Carmack Amendment, because Hoskins "seeks to impose liability arising out [of] the interstate transportation of goods by a common carrier."[2]

_____

[2] The propriety of removal under 28 U.S.C. § 1441 is linked to the original jurisdiction of federal district courts. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1337 states in relevant part:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however*, That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49 only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

3

To determine whether a cause of action presents a federal question we examine the plaintiff's well-pleaded complaint. Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). Generally, the plaintiff is the master of her complaint. Carpenter v. Wichita Falls Ind. School Dist., 44 F.3d 362, 366 (5th Cir. 1995). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Beneficial Nat'l Bank v. Anderson, 123 S. Ct. 2058, 2062 (2003).

"A defendant may not remove on the basis of an anticipated or even inevitable federal defense, but instead must show that a federal right is an element, and an essential one, of the plaintiff's cause of action." Carpenter, 44 F.3d at 366 (internal quotation marks omitted). For example, a defense that relies on "the pre-emptive effect of a federal statute will not provide a basis for removal." Beneficial, 123 S. Ct. at 2062 (citation omitted). As we have explained, "[a] plaintiff with a choice between federal - and state - law claims may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded." Carpenter, 44 F.3d at 366.

The well-pleaded complaint rule, however, is not without its exceptions. In certain situations, Congress has created the exceptions. See Beneficial, 123 S. Ct. at 2062 (describing the unusual pre-

---

"There is no distinction . . . between the 'arising under' requirements for section 1337 and section 1331." Richardson v. United Steelworkers of Am., 864 F.2d 1162, 1168 n.6 (5th Cir. 1989) (citing Franchise Tax Bd. v. Const. Laborers Trust, 463 U.S. 1, 8 n.7 (1983)).

4

emption provision in the Price-Anderson Act which expressly provides for removal of actions brought in state court "even when they assert only state-law claims"). In other contexts, the Supreme Court has construed certain federal statutes as "not only preempting state law but also authorizing removal of actions that sought relief only under state law." Id. (determining that §§ 85 and 86 of the National Bank Act provide for complete pre-emption); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (finding complete pre-emption in § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132); Avco Corp. v. Machinists, 390 U.S. 557 (1968) (construing § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to provide complete pre-emption). In these contexts, the federal statute "so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." Carpenter, 44 F.3d at 366.

In her original state court petition, Hoskins alleged that she entered into agreements whereby Bekins would first store, then transport her belongings from Texas to Virginia. Hoskins alleged that at the time of delivery, she noticed that many of her belongings were missing or damaged. She further alleged that Bekins acted as the initial, connecting, and delivering carrier for her shipment of goods. Hoskins asserted claims against Bekins for negligence, breach of contract, and violations of the Texas Deceptive Trade Practices Act. She sought damages, including punitive damages, as well as attorney's fees. Hoskins' original state court petition does not affirmatively present a federal claim. This, of course, does not end our inquiry.

As the Supreme Court recently expounded, "a state claim may be removed to federal court in only two circumstances – when Congress expressly so provides . . ., or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." Beneficial, 123 S. Ct. at 2063 (emphasis added). Because the Carmack Amendment does not expressly provide for removal

5

of state law claims, Bekins properly removed this case only if the Carmack Amendment completely pre-empts state law claims for loss or damage to goods arising from the interstate transportation of those goods by a common carrier. "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Id.

In Beers v. North American Van Lines, Inc., this Court found that removal was improper where the plaintiffs' state law complaint "was based entirely on state law." 836 F.2d 910, 912 (5th Cir. 1988). The plaintiffs in Beers paid a common carrier an additional sum of money to obtain full replacement value for any items lost or damaged during their interstate move, with a maximum liability of $3.00 per pound shipped. Id. Numerous items were lost or damaged during the move and a dispute arose over the extent of the carrier's liability because the two bills of lading issued were inconsistent - one reflected the extra coverage, while the other did not. Id. The plaintiff brought suit in state court, alleging tortious loss of goods, tortious breach of the insurance contract, breach of fiduciary duties, fraud in the inducement to contract, and negligent and intentional infliction of emotional distress. Id. This Court found that removal was improper because neither the state court complaint, nor the defendants' defense of federal pre-emption, conferred federal question jurisdiction. Id. at 913. In reaching this conclusion, we noted the existence of the complete pre-emption doctrine and explained the following:

> [T]he [Supreme] Court, while extending Avco to ERISA cases, emphasized the limited nature of this exception. In Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S. Ct. 1542, 1548, 95 L. Ed. 2d 55, 65 (1987), the Court cautioned: "Even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." Further, the Court required a clearly manifested congressional intent to make state claims removable to federal court. Taylor, 107 S. Ct. at 1547-48, 95 L. Ed. 2d at 64-65.

6

Id. at 913 n.3. We then rejected complete pre-emption under the Carmack Amendment as a basis for removing the plaintiffs' state law claims to federal court based on our determination that the plaintiffs' claims did not "fall within the narrow exception of Avco and its progeny." Id. Specifically, we found "no manifest congressional intent, of the type contemplated in Taylor, to make this state claim removable to federal court."[3] Id.

In a subsequent case, Moffit v. Bekins Van Lines Co., 6 F.3d 305 (5th Cir. 1993), this Court affirmed the district court's grant of summary judgment to the defendant common carrier on each of the plaintiff's state law claims arising from an interstate move, based upon the pre-emptive effect of the Carmack Amendment. Although the plaintiff's case, which consisted solely of state law claims, was removed to federal court based on federal question jurisdiction, this Court did not address the propriety of that removal.

Our decisions in Beers and Moffit have resulted in conflicting decisions among district courts within our Circuit regarding the complete pre-emptive effect of the Carmack Amendment. Compare Ervin v. Stagecoach Moving & Storage Inc., No. 3:01CV0587, 2001 WL 1667820 (N.D. Tex. 2001) (stating that Moffit must yield to Beers as the prior panel decision, thus no complete pre-emption), and The Schaper Co. v. C.A.R. Transportation Brokerage Co., No. 1:97cv314-D-A, 1997 WL 852488 (N.D. Miss. 1997) (relying on Beers to find no complete pre-emption in the Carmack

---

[3] Other courts have similarly found no complete preemption in the Carmack Amendment based on a lack of Congressional intent to remove all state law claims. See, e.g., Circle Redmont, Inc. v. Mercer Transp. Co., 78 F. Supp. 2d 1316, 1319 (M.D. Fla. 1999) ("[B]ecause the Carmack Amendment's language and history do not manifest an intent to make state law claims removable as Carmack claims, the complete preemption doctrine does not apply to give this Court jurisdiction."); Ben & Jerry's Homemade, Inc. v. KLLM, Inc., 58 F. Supp. 2d 315, 318 (D. Vt. 1999) ("Congress has not clearly manifested an intent to make any action involving carrier liability removable to federal court.").

7

Amendment), with Kimmel v. Bekins Moving & Storage Co., 210 F. Supp. 2d 850, 853 (S.D. Tex. 2002) (sustaining removal of state law claims based on the complete pre-emptive effect of the Carmack Amendment, citing to Moffit and Morris v. World Wide Moving, Inc., 144 F.3d 377 (5th Cir. 1998)), Duerrmeyer v. Alamo Moving & Storage One Corp., 49 F. Supp. 2d 934, 936-37 (W.D. Tex. 1999) (concluding that complete pre-emption applies and removal was proper in light of Moffit), and Simmons v. United Parcel Service, 924 F. Supp. 65 (W.D. Tex. 1996) (finding that the Carmack Amendment completely pre-empts all state law claims against a common carrier based, in part, on Moffit). Other courts have attempted to align Beers and Moffit. See Bear MGC Cutlery Co. v. Estes Express Lines, Inc., 132 F. Supp. 2d 937, 944 (N.D. Ala. 2001) ( noting that "Beers arguably held that the Carmack Amendment did not completely preempt state law for removal purposes, [while] Moffit neither overturned Beers nor referenced it"); Lamm v. Bekins Van Lines Co., 139 F. Supp. 2d 1300, 1311 n.5 (M.D. Ala. 2001) (stating that Moffit engaged only "the substantive-law issue of the scope of ordinary preemption by the Carmack Amendment rather than the jurisdictional issue of complete preemption"); but see Reeves v. Mayflower Transit, Inc., 87 F. Supp. 2d 1251, 1254 (M.D. Ala. 1999) (finding that Beers does not represent the current governing view of the Carmack Amendment and noting that in Moffit, a later panel of the Fifth Circuit "retreated from the views expressed" in Beers).

We adhere to our earlier decision in Beers until that decision is "overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc." Cent. Pines Land Co. v. United States, 274 F.3d 881, 893 (5th Cir. 2001) (quoting United States v. Kirk, 528 F.2d 1057, 1063 (5th Cir. 1976)). As we will explain, the Supreme Court's recent decision in Beneficial National Bank v. Anderson expressly overruled the analysis used in Beers to reject the

complete pre-emptive effect of the Carmack Amendment. Because the legal landscape surrounding the complete preemption doctrine has shifted, we are no longer bound by our holding in Beers.

Under this Court's precedent, in order to demonstrate complete pre-emption over a plaintiff's otherwise purely state law claims, the defendant must show the following:

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

Johnson v. Baylor Univ., 214 F.3d 630, 632 (5th Cir. 2000) (quoting Heimann v. Nat. Elevator Ind. Pension Fund, 187 F.3d 493, 500 (5th Cir. 1999)) (emphasis added). In Beers, we found no clearly manifested Congressional intent that state law claims for loss or damage to goods during an interstate shipment by a common carrier be removable - in other words, the third element of the complete pre-emption analysis was lacking. Similarly, in Beneficial the respondents argued before the Supreme Court that the requisite Congressional intent to make state usury claims against national banks removable was lacking in the National Bank Act.[4] In particular, the respondents noted that the National Bank Act was enacted prior to the removal statutes. The Supreme Court held that "[o]nly if Congress intended § 86 [of the National Bank Act] to provide the exclusive cause of action for usury claims against national banks would the statute be comparable to the provisions that we construed in the Avco and Metropolitan Life cases." 123 S. Ct. at 2064 (emphasis added). The Supreme Court explained that:

---

[4] The Eleventh Circuit declined to extend the complete pre-emption doctrine to the National Bank Act because it found "clear congressional intent to permit removal" lacking. Anderson v. H&R Block, Inc., 287 F.3d 1038, 1047 (11th Cir. 2002), rev'd sub nom. Beneficial National Bank v. Anderson, 123 S. Ct. 2058 (2003).

9

> Because the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable, the fact that these sections of the National Bank Act were passed in 1864, 11 years prior to the passage of the statute authorizing removal, is irrelevant, . . . .

Id. at 2064 n.5. We view Beneficial as evidencing a shift in focus from Congress's intent that the claim be removable, to Congress's intent that the federal action be exclusive.

This Court's holding in Beers rested on its finding that "no manifest congressional intent, of the type contemplated in [Metropolitan Life v.] Taylor, to make this state claim removable to federal court" existed. Beers, 836 F.2d at 913 n.3. Prior to Beneficial, this finding would have ended our inquiry.[5] Now, however, we must instead determine whether Congress intended the Carmack Amendment to provide the exclusive cause of action for claims arising out of the interstate transportation of goods by a common carrier. See Beneficial, 123 S. Ct. at 2067 ("[T]he analysis in today's opinion implicitly contradicts (by rendering inexplicable) Taylor's discussion of pre-emption and removal.") (Scalia, J., dissenting).

---

[5] In Taylor, the Supreme Court first acknowledged that the plaintiff's state law claims were pre-empted by ERISA, and that they fell within the scope of ERISA's civil enforcement provision. 481 U.S. at 63. In finding complete preemption, however, the Court did not rest on these findings. As the Supreme Court explained:

> [T]he touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [ERISA] removable to federal court.

Id. at 65. Justice Brennan described the Court's holding as follows: "The Court holds only that removal jurisdiction exists when, as here, 'Congress has clearly manifested an intent to make causes of action . . . removable to federal court.'" Id. at 67-68 (Brennan, J. concurring) (emphasis in original).

10

"[T]he Carmack Amendment was adopted without discussion or debate." Rini v. United Van Lines, 104 F.3d 502, 504 (1st Cir. 1997); see also Bear MGC Cutlery Co., 132 F. Supp. 2d at 946 ("[T]here is a dearth of legislative history surrounding the Carmack Amendment."). Nevertheless, the Supreme Court, and this Court, have attempted to ascertain Congressional intent from an analysis of the Carmack Amendment itself, and detailed its broad pre-emptive purpose. Most notably, in Adams Express Company v. Croninger, the Supreme Court stated the following:

> [T]his branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own State, or for a carrier whose lines were extensive, to know, without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one State to another. The congressional action has made an end to this diversity; for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transaction. This was doubtless the purpose of the law; and this purpose will be effectuated, and not impaired or destroyed, by the state court's obeying and enforcing the provisions of the Federal statute where applicable to the fact in such cases as shall come before them.

226 U.S. 491, 505 (1913) (quoting Southern P. Co. v. Crenshaw Bros., 63 S. E. 865 (Ga. 1909)). Furthermore, the Supreme Court found that because "[a]lmost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulations with reference to it." Id. at 506.

In Missouri, K. & T. R. Co. of Tex. v. Harris, the Supreme Court summarized its holding, from a series of cases beginning with Adams Express Co., as follows: "[T]he special regulations and policies of particular States upon the subject of the carrier's liability for loss or damage to interstate shipments, and the contracts of carriers with respect thereto, have been superseded." 234 U.S. 412, 420 (1914); see also New York, N.H. & H.R. Co. v. Nothnagle, 346 U.S. 128, 131 (1953) ("With

11

the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss."). The Supreme Court reiterated this view in Charleston & Western Carolina Railway Co. v. Varnville Furniture Co., when it noted that state laws are pre-empted by the Carmack Amendment if they "in any way enlarge the responsibility of the carrier for loss or at all affect the ground of recovery, or the measure of recovery." 237 U.S. 597, 603 (1915) (internal quotation marks omitted).

In Air Products & Chemicals, Inc. v. Ill. Central Gulf R. R. Co., relying on Supreme Court decisions beginning with Adams Express Co., this Court held that "the Carmack Amendment, as judicially interpreted, provides an exclusive remedy for a breach of contract of carriage provided by a bill of lading." 721 F.2d 483, 484-85 (5th Cir. 1983) (emphasis added). We concluded that "Congress intended by the Carmack Amendment to provide a uniform national remedy against carriers for breach of the contract of carriage, including a liability for default in any common-law duty as a common carrier." Id. at 487.

In Moffit v. Bekins Van Lines Co., we again recognized the broad reach of the Carmack Amendment and held that the Carmack Amendment pre-empted all of the plaintiff's state law claims which included claims for 1) the tort of outrage, 2) intentional and negligent infliction of emotional distress, 3) breach of contract, 4) breach of implied warranty, 5) breach of express warranty, 6) violation of the Texas Deceptive Trade Practices Act sections 17.46 and 17.50, 7) slander, 8) misrepresentation, 9) fraud, 10) negligence and gross negligence, and 11) violation of the common carrier's statutory duties as a common carrier under state law. 6 F.3d 305, 306 (5th Cir. 1993). As we stated, "[t]o hold otherwise would only defeat the purpose of the statute, which was to create uniformity out of disparity." Id. at 307.

12

More recently, in Morris v. Covan World Wide Moving, Inc., we further held that federal common law remedies are also preempted by the Carmack Amendment. 144 F.3d 377, 379 (5th Cir. 1998). In doing so, we stated the following: "In actions seeking damages for the loss of property shipped in interstate commerce by a common carrier under a receipt or bill of lading, the Carmack Amendment is the shipper's sole remedy." Id. at 382.[6]

We are persuaded by the preceding decisions and analysis offered by the Supreme Court, and this Court, that Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier. Accordingly, we hold that the complete pre-emption doctrine applies. Because the Carmack Amendment provides the exclusive cause of action for such claims, we find that Hoskins' claims "only arise[] under federal law and could, therefore, be removed under § 1441."[7] Beneficial, 123 S. Ct. at 2064.

---

[6] Specifically, we held that "the Carmack Amendment pre-empts any [federal] common law remedy that increases the carrier's liability beyond 'the actual loss or injury to the property,' 49 U.S.C. § 11707(a)(1) [recodified at 49 U.S.C. § 14706 et seq.], unless the shipper alleges injuries separate and apart from those resulting directly from the loss of shipped property." Morris, 144 F.3d at 382. Thus, we concluded that the shipper's federal common law claims for punitive damages, and compensatory damages for lost wages and emotional suffering, were pre-empted. Id. at 383.

[7] We are cognizant of the fact that 28 U.S.C. § 1445 prohibits removal of Carmack claims "unless the matter in controversy exceeds $10,000." We are equally aware that Carmack claims may be brought, and adjudicated, in state court. See 49 U.S.C. § 14706(d)(3) ("A civil action under this section may be brought in a United States district court or in a State court."). Although both of these facts may have been relevant to an analysis of whether Congress intended for Carmack claims to be removable, they have no bearing on the salient issue today, i.e. whether Congress intended the Carmack Amendment to provide the exclusive cause of action for claims for loss or damage to goods arising from the interstate transportation of those goods by a common carrier. See Beneficial, 123 S. Ct. at 2064 n.5. Because we find that the Carmack Amendment provides the exclusive cause of action for such claims, these claims are "removable," and can be removed if they meet the matter in controversy requirement.

13

II.     Summary Judgment

We review the grant of summary judgment de novo. Mowbray v. Cameron County, Tex., 274 F.3d 269, 278 (5th Cir. 2001). Summary judgment is appropriate only when the record indicates "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "Questions of fact are reviewed in the light most favorable to the nonmovant and questions of law are reviewed de novo." Mowbray, 274 F.3d at 278-79.

In order to establish a prima facie case for loss or damage to goods arising from the interstate transportation of those goods by a common carrier, the shipper must demonstrate: (1) delivery of the goods in good condition, (2) receipt by the consignee of less goods or damaged goods, and (3) the amount of damages. Accura Systems, Inc. v. Watkins Motor Lines, Inc., 98 F.3d 874, 877 (5th Cir. 1996); Johnson & Johnson v. Chief Freight Lines Co., 679 F.2d 421, 421 (5th Cir. 1982). A carrier may limit its liability if the carrier: (1) maintains a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board); (2) obtains the shipper's agreement as to her choice of liability; (3) gives the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issues a receipt or bill of lading prior to moving the shipment. Rohner Gehrig Co. v. Tri-State Motor Transit, 950 F.2d 1079, 1081 (5th Cir. 1992) (en banc). At issue in this case is the validity of the $70,000 limitation of liability. The parties agree that Bekins maintained a tariff. Dispute arises over the remaining three elements necessary to establish a valid limitation of liability.

Hoskins asserts that a Bekins representative met with her at her Houston residence before the goods were loaded for storage and transportation to discuss Hoskins' coverage options. This meeting resulted in the "Interstate Order for Service," a document which contained all of the salient

14

terms of the contract for carriage.[8] Hoskins concedes that she chose a $50,000 limitation of liability at that point, and later changed that limitation to $70,000 on packing day. Thus, we find that no issue of material fact exists concerning the second element because Bekins clearly obtained Hoskins' agreement as to her choice of liability.[9]

Hoskins has also failed to raise an issue of fact concerning whether she was given reasonable opportunity to choose between two or more levels of liability. A shipper has a reasonable opportunity to choose among two levels of liability when she has "both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice." See Hughes v. United Van Lines, 829 F.2d 1407, 1419 (7th Cir. 1987). Hoskins stated the following in her motion for reconsideration pertaining to her meeting with the Bekins representative prior to her move:

> I told him then that most of my household items had been gifts or family pieces and I really had no idea of their overall value. I remember very clearly that he then said to me to choose a figure that would protect me if one very valuable piece was damaged as it was highly unlikely that the truck would fall off the mountain or the entire shipment disappear (only 1/3 of it!). So I chose $50,000.

Hoskins then chose to increase that level of liability on packing day after observing the packers handling one of her possessions, a Queen Anne mirror. She "decided that [she] had better increase

---

[8] The Interstate Order for Service was attached to Hoskins' motion for reconsideration. "If the party seeking reconsideration attaches additional materials to its motion that were not presented to the trial court for consideration at the time the court initially considered the motion for summary judgment, the court may consider the new materials in its discretion. If the court considers the materials but still grants summary judgment, the appellate court may review all materials de novo." Ford Motor Credit Co. v. Bright, 34 F.3d 322, 324 (5th Cir. 1994) (citations omitted).

[9] We find unpersuasive Hoskins' argument that she "obviously did not assent to the terms contained in the limitations of liability provision" because she did not see the bill of lading until her shipment was delivered, given her own statements in her motion for reconsideration that she first chose a $50,000 limitation of liability, then increased the limitation to $70,000.

the liability to cover what [she] thought would be a[n] inevitable total loss of that mirror." By Hoskins' own statements, Bekins clearly gave her a reasonable opportunity to choose between levels of liability and she chose only $70,000.

Regarding the fourth and final element for a valid limitation of liability, we find that the Interstate Order for Service in this case, which contained the agreed upon terms of the contract for carriage, constituted a "receipt" issued prior to the shipment. See Johnson v. Bekins Van Lines Co., 808 F. Supp. 545, 548 (E.D. Tex. 1992) (concluding that an interstate order for service qualified as a "receipt"), aff'd, 995 F.2d 221 (5th Cir. 1993), cert. denied, 510 U.S. 977 (1993). Hoskins states in her motion for reconsideration that she "chose $50,000" as her limitation of liability during her pre-move meeting with the Bekins representative. This limitation of liability is reflected in the Interstate Order for Service received by Hoskins, with a note attached asking her to sign the document and to return it or to give it to the driver. Although unsigned, Hoskins' motion for reconsideration makes it clear that she manifested assent to the terms of the contract expressed in the Interstate Order for Service. See Am. Ry. Express Co. v. Lindenberg, 260 U.S. 584, 591 (1923) (finding that there is no requirement that the shipper sign the bill of lading prior to shipment, so long as the shipper manifests assent to the contract).

It is apparent from the record in this case that the document entitled Interstate Order for Service represented the salient terms of the contract for carriage. On the day Hoskins handed over her goods, she manifested her assent by increasing the liability coverage to $70,000 - an increase honored by Bekins.[10] Under these facts, we find that the Interstate Order for Service operated as a

---

[10] This $70,000 amount appears typewritten on the document entitled "bill of lading" which Hoskins argues was insufficient because it was given to her after the shipment arrived in Virginia.

16

receipt issued prior to the shipment, thus, Hoskins is bound by the limitation of liability she agreed to prior to the shipment.[11]

## CONCLUSION

For the reasons outlined above, we find that the district court had subject matter jurisdiction over this controversy.  We further find that Hoskins has failed to present a genuine issue of material fact pertaining to the validity of the limitation of liability.  Because Bekins has already paid Hoskins her total declared value of $70,000, we AFFIRM the district court's grant of summary judgment on behalf of Bekins.

AFFIRM.

---

[11] We reject Hoskins' argument that her summary judgment evidence compels the reasonable inference that a portion of her loss was attributable to Bekins' criminal misconduct.  Hoskins offers only speculation in support of this claim.