**MAYFLOWER TRANSIT, L.L.C., Plaintiff,**

v.

**Eric TROUTT and Amy Troutt, Defendants.**

No. EP–04–CA–0030–PRM.

United States District Court, W.D. Texas, El Paso Division.

Aug. 19, 2004.

After careful consideration, the Court is of the opinion that Mayflower's Motion should be granted and that default judgment should be entered in its favor, for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 28, 2004, Mayflower, a Missouri corporation and interstate motor carrier of household goods, filed its "Complaint for Declaratory Judgment" ("Complaint") in this Court. With its Complaint, Mayflower requests that the Court enter a declaratory judgment in its favor essentially stating that it has no duty to deliver certain office furniture to the Troutts, a husband and wife who formerly resided in El Paso, Texas and now reside in Mt. Vernon, Illinois.

Mayflower claims that, at some time in November 2002, the Troutts "contacted Mayflower's agent, Valley Moving & Storage ('Valley'), to provide an estimate for the transportation of their household goods from El Paso, Texas to Mt. Vernon, Illinois." Complaint ¶ 8. Allegedly, Eric Troutt requested that Valley provide two cost estimates, one for the cost of shipping various household possessions and another estimate for the cost of shipping other office furniture located outside the Troutts' El Paso home. *Id.* According to Mayflower, Valley provided the Troutts with both estimates, but Eric Troutt stated that "the estimate for moving the office furniture exceeded the amount that [he] had been allowed by a third party who was purportedly reimbursing [him] for his move." *Id.* Apparently, Eric Troutt never requested Mayflower to move the office furniture to Illinois. *Id.*

Mayflower states that the Troutts tendered various household goods to Mayflower on or about January 30, 2003 for transport to Illinois. *Id.* ¶ 9. Mayflower

Vic Houston Henry, Henry Oddo Austin & Fletcher, P.C., Dallas, TX, for plaintiff.

Eric Troutt, Mt. Vernon, IL, pro se.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

MARTINEZ, District Judge.

On this day, the Court considered Plaintiff Mayflower Transit L.L.C.'s ("Mayflower") "Motion for Default Judgment Against Eric Troutt and Amy Troutt and Brief in Support Thereof" ("Motion") and Mayflower's "Request for Entry of Default Judgment and Memorandum in Support" ("Request") filed on March 25, 2004 and June 7, 2004, respectively, in the above-captioned cause. As of the date of this order, Defendants Eric Troutt and Amy Troutt ("Defendants" or "the Troutts") have neither responded to the Motion nor have they filed a motion to set aside the entry of their default.

next claims that, on February 13, 2003, the Troutts executed a Bill of Lading relating to their shipment. *Id.* ¶ 10. Thereafter, the Troutts' household items were shipped and delivered to the Troutts in Illinois.[1] *Id.* ¶ 11. Mayflower claims that, after delivery was complete, it received an April 23, 2003 letter from the Troutts, in which the Troutts stated that they were still awaiting the arrival of their office furniture. *Id.* Mayflower states that the Troutts never arranged for the delivery of their office furniture; nevertheless, it informed the Troutts that it could arrange for the delivery of the office furniture in exchange for proper payment. *Id.* On January 14, 2004, Mayflower apparently received a demand from the Troutts, in which the Troutts asserted various common law claims against Mayflower[2] and demanded $75,000[3] in damages. *Id.*

In further support of its Complaint, Mayflower points out that Valley prepared a Table of Measurements detailing the specific goods that were to be moved, and that the Table of Measurements did not include any of the Troutts' office furniture. *Id.* ¶ 14. Additionally, Eric Troutt allegedly signed a Household Goods Descriptive Inventory, acknowledging the contents shipped and received. *Id.* ¶ 15. The Troutts "declared no exceptions to the Household Goods Delivery Inventory at origin or destination" of carriage. *Id.* Finally, Mayflower notes that the Bill of Lading provides that any claim that the Troutts had relating to the loss of, or

damage to, their property had to be filed with Mayflower no later than nine months after delivery, but the Troutts have not submitted a properly prepared claim. *Id.* ¶ 16. Thus, it argues, the Troutts are time-barred from pursing a claim relating to Mayflower's shipment of their possessions. *Id.*

Mayflower seeks a declaratory judgment which would declare (1) that "any alleged claims of Defendants for breach of contract, loss of use, fraud and property damage are preempted by the Carmack Amendment," (2) that "Mayflower is not liable to Defendants for delay or property damage," and (3) that "Mayflower is not obligated to transport Defendants' office furniture until Defendants pay the applicable interstate tariff charges for such a shipment." *Id.* at 5–6.

## II. ANALYSIS

In order to properly resolve Mayflower's Motion, the Court must conduct two primary inquiries and assess (1) whether default judgment is procedurally proper and (2) whether declaratory relief is appropriate.

### A. Is Default Judgment Procedurally Proper?

Federal Rule of Civil Procedure 55[4] sets forth certain conditions under which default may be entered against a party, as well as the procedure by which a party may seek the entry of default judgment.

---

1. Mayflower's Complaint states that Troutts executed the Bill of Lading on February 13, 2003, and that they also received their household items that same day. *Id.* ¶¶ 10–11. The Court believes that the Bill of Lading may have been executed prior to receipt and that one of these dates may be incorrect. Regardless, any error is of no consequence to Mayflower's Motion.

2. Based on the record, the only claims that the Troutts asserted were claims related to the

loss of, or damage to, their office furniture. Nothing in Mayflower's Complaint shows that the Troutts raised an issue relating to their household items.

3. A demand of exactly $75,000 would be insufficient for purposes of diversity jurisdiction.

4. Any citation of a "Rule" in this Order is a citation to the Federal Rules of Civil Procedure.

If a party "against whom a judgment for affirmative relief is sought" fails to "plead or otherwise defend" a case, and "that fact is made to appear by affidavit or otherwise, the clerk [of court] shall enter the party's default." FED. R. CIV. P. 55(a). Once a default is entered, "the party entitled to a judgment by default" may move the Court for entry of default judgment. FED. R. CIV. P. 55(b). The Fifth Circuit has concisely summarized the steps leading up to default judgment.

> A *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An *entry of default* is what the clerk enters when the default is established by affidavit or otherwise ... After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment.*

*New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir.1996) (citation omitted).

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir.1989) (citations omitted). In accord with that policy, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle,* 75 F.3d 207, 212 (5th Cir.1996). Rather, a default judgment is normally committed to the discretion of the district court. *Mason v. Lister,* 562 F.2d 343, 345 (5th Cir.1977).

The procedural background of this case establishes that the Troutts did default and that the District Clerk's entry of their default was proper. Mayflower filed its Complaint on January 26, 2004. Shortly thereafter, it proceeded to serve the Troutts through the Texas Secretary of State.[5] Although the Troutts were served with Mayflower's Complaint, they defaulted by failing to timely "plead or otherwise defend." On March 25, 2004, the District Clerk properly entered their default, pursuant to Rule 55(a).

On March 26, 2004, the Troutts faxed a document entitled "Entry of Appearance and Request for Enlargement of Time to Further Plead or Answer" ("Entry of Appearance") directly to the undersigned judge's chambers, without obtaining permission to do so.[6] Because the Troutts were appearing *pro se,* the Court entered an order stating that it would permit their Entry of Appearance to be filed despite the fact that they had not submitted it in accordance with the Court's local rules or procedure.[7] The Court also granted the Troutts an extension of time (until April 14, 2004) to file a motion to set aside entry

---

5. The Secretary of State received Mayflower's Summons and Complaint on February 2, 2004, and forwarded those documents to both of the Troutts individually on February 6, 2004 via certified mail, return receipt requested. *See* Cert. Serv. The Secretary of State received both return receipts on February 9, 2004. *Id.*

6. All documents presented for filing in the El Paso Division of the Western District of Texas must be submitted to the District Clerk's office, not directly to a judge's chambers.

7. Although Eric Troutt represented that he is an attorney, the Court was unaware of his

prior experience in this courthouse. The Court has learned that Eric Troutt has filed at least two civil actions on his own behalf with the El Paso Division: (1) *Troutt v. Transcontinental Adjustment Co.,* EP–02–CV–181, a suit filed under the Fair Debt Collection Act ("FDCA") (dismissed against Troutt for failure to prosecute) and (2) *Troutt v. Bank Regions,* EP–02–CV–305, another FDCA suit (dismissed by Troutt himself). The Court sees no reason justifying Troutt's inability to comply with this Court's local rules; he is an attorney with past experience with this Division.

of default. In no uncertain terms, the Court pointed out to the Troutts that because default had been entered, they were required to file a motion to set aside entry of default, succeed on that motion, and only then would they be permitted to file a responsive pleading or motion. The Troutts failed to timely respond to the Court's March 30, 2004 order.

On May 17, 2004, the Court entered an Order to Show Cause why Mayflower's Motion should not be granted in light of the Troutts' failure to move to set aside entry of default. On June 1, 2004, the Troutts disregarded the Court's local rules and its March 30, 2004 order by faxing another document directly to chambers. The District Clerk's office returned this document to the Troutts with clear instructions to properly re-file the document. To date, the Court has yet to receive a motion to set aside entry of default from the Troutts, and it can only conclude that the Troutts do not oppose the entry of default judgment.[8]

Finally, Rule 55(b) specifically restricts the availability of default judgments, but none of its restrictions apply in this case. This case does not involve "an infant or incompetent person," see FED. R. CIV. P. 55(b)(2), nor does it involve a default against the United States, see FED. R. CIV. P. 55(e). Further, neither of the Troutts is in military service. See 50 U.S.C. Appx. § 501, et seq.; FED. R. CIV. P. 55, Adv. Comm. Notes; Mot. ¶ 5. Additionally, Rule 55(b)(2) requires that notice be provided to a party facing entry of default judgment, but only if that defaulting party has appeared in the action. FED. R. CIV. P. 55(b)(2). Here, the Troutts have received notice of Mayflower's Complaint, Mayflower's Motion, and Mayflower's Request; thus, the requirement of Rule 55(b)(2) has been satisfied.

Accordingly, all procedural prerequisites for entry of default judgment have been met, and default judgment is procedurally warranted in this matter.

### B. Is Declaratory Relief Appropriate?

With the procedural requirements for default judgment satisfied, the Court must next evaluate Mayflower's Complaint and satisfy itself that "[t]here [is] a sufficient basis in the pleadings for the judgment." *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). That said, by virtue of its default, the Troutts have "admit[ted] [Mayflower's] well-pleaded allegations of fact." *Id. See also Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir.1977) (stating "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). Thus, only if Mayflower's Complaint provides a sufficient basis for the relief it seeks can the Court grant default judgment, and issue declaratory relief, in Mayflower's favor. Because Mayflower seeks a declaratory judgment, certain specific considerations must be addressed.

#### 1. Does The Court Have Subject Matter Jurisdiction?

The Declaratory Judgment Act ("DJA") does not provide an independent source of federal jurisdiction; rather, it provides a federal *remedy* that may be invoked when jurisdiction otherwise properly exists. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *TTEA v. Ysleta del Sur Pueblo,* 181 F.3d 676, 681 (5th Cir.1999). "If there is an underlying ground for federal court jurisdiction, the [DJA] 'allow[s] parties to precipitate suits that otherwise might need to wait for the

---

8. Western District of Texas Local Rule CV–7 provides that the Court may treat a motion as unopposed when a party fails to properly oppose it.

declaratory relief defendant to bring a coercive action.'" *Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir.2003) (citation omitted). "[A] federal district court has subject matter jurisdiction over a declaratory judgment action if ... a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law." *Id.* at 1259.

The Carmack Amendment to the Interstate Commerce Act is codified at 49 U.S.C. § 14706, and it affords interstate shippers a statutory right to recover actual losses to property caused by interstate carriers. *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 928–29 (7th Cir.2003). In other words, it sets forth "a comprehensive remedial scheme whereby a shipper whose cargo is lost or damaged by a carrier may recover damages for that loss." *Glass v. Crimmins Transfer Co.*, 299 F.Supp.2d 878, 884 (C.D.Ill.2004).

Carmack Amendment claims may be pursued in either state or federal court, *see* 49 U.S.C. § 14706(d); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 n. 7 (5th Cir.2003), and federal district courts have original jurisdiction over Carmack Amendment claims "only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs," 28 U.S.C. § 1337(a).

■■ The Fifth Circuit recently held that the Carmack Amendment completely preempts state and common law claims arising from the loss of, or damage to, goods shipped in interstate commerce. *Hoskins*, 343 F.3d at 778. As a general rule, federal preemption of state law is a defense that does not serve as a basis for federal subject matter jurisdiction. *Cater-*

*pillar, Inc. v. Williams*, 482 U.S. 386, 392–93, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (discussing "well-pleaded complaint" rule and notion that federal preemption of state law does not permit removal of state claims) (citation omitted). However, "[o]nce an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, *from its inception,* a federal claim, and therefore arises under federal law." *Id.* at 393, 107 S.Ct. 2425 (citation omitted) (emphasis added). Because the Carmack Amendment provides the exclusive cause of action for claims arising from the loss of, or damage to, goods shipped in interstate commerce, and preempts state and common law causes of action based on such conduct, a plaintiff cannot "plead around" the Carmack Amendment. Any claim based on the loss of, or damage to, goods shipped in interstate commerce and within the reach of the Carmack Amendment arises under federal law. *See, e.g., Stephenson v. Wheaton Van Lines, Inc.*, 240 F.Supp.2d 1161, 1166 (D.Kan.2002) (finding breach of contract and negligence claims were preempted by Carmack Amendment and preemption "converted" those state law claims into claims arising under federal law); *Stein Jewelry Co. v. United Parcel Serv.*, 228 F.Supp.2d 304, 307 (S.D.N.Y.2002) (stating gravamen of complaint was failure to properly ship goods and claims arose under Carmack Amendment in light of artful-pleading doctrine).

Based on the allegations in Mayflower's Complaint, if the Troutts pursued a coercive action relating to any loss of, or damage to, their office furniture, their claim would fall directly within the reach of the Carmack Amendment and would, therefore, raise an issue of federal law.[9] Any

---

9. Beyond that, a federal district court would have original jurisdiction over the Troutts' claims because they allegedly suffered $75,000 in damages-far in excess of the Carmack Amendment's $10,000 original jurisdiction requirement.

state or common law claims pursued by the Troutts in connection with the loss of, or damage to, their office furniture would be preempted by the Carmack Amendment. *See Hoskins,* 343 F.3d at 778. Accordingly, federal subject matter jurisdiction would exist over those preempted claims, which means that this Court has subject matter jurisdiction over Mayflower's request for declaratory relief.

### 2. Is Declaratory Relief Appropriate Under The DJA?

The DJA, codified at 28 U.S.C. § 2201(a), states that, subject to certain exceptions,

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

One of the purposes of the DJA is to "resolve outstanding controversies without forcing a putative defendant to wait to see if it will be subjected to suit." *Sherwin–Williams Co. v. Holmes County,* 343 F.3d 383, 398 n. 8 (5th Cir.2003). It serves to "minimize the danger of avoidable loss and the unnecessary accrual of damages and afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action." *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 219 n. 11 (5th Cir. 1998) (citation omitted).

The DJA is an " 'enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.' " *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (citation omitted). "District courts have a broad, but not unfettered, measure of discretion in deciding whether to entertain an action for a declaratory judgment." *Dow Agrosciences v. Bates,* 332 F.3d 323, 327 (5th Cir.2003) (citations omitted). "In the exercise of their sound discretion to entertain declaratory actions the district courts may not decline on the basis of whim or personal disinclination." *Hollis v. Itawamba County Loans,* 657 F.2d 746, 750 (5th Cir.1981).

"When considering a declaratory judgment action, a district court must engage in a three-step inquiry. First, the court must determine whether the declaratory action is justiciable." *Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir.2000). In other words, the Court must be satisfied that the declaratory judgment suit presents an actual "controversy." *Id.* (citation omitted). "Second, if it has jurisdiction, then the district court must resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Id.* (citation omitted). "Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* (citation omitted).

#### a. Is Mayflower's Suit Justiciable?

"A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *Orix Credit Alliance,* 212 F.3d at 896 (citations omitted). "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality' [exists] between parties having adverse legal interests." *Id.* (citations omitted). Simply put, "in order to achieve the status of a case or controversy, a dispute must exist between two parties having adverse legal interests." *S. Jackson & Son, Inc. v. Coffee, Sugar, & Cocoa Exchange, Inc.,* 24 F.3d 427, 431 (2d Cir.1994) (citation omitted). "Whether

particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Orix Credit Alliance,* 212 F.3d at 896. (citations omitted):

With their default, the Troutts have admitted all of Mayflower's well-pleaded factual allegations as true, and those factual allegations establish that the Troutts believe that Mayflower has a duty to deliver their office furniture to them in Illinois and that Mayflower is liable to them in connection with that duty. This is clearly evidenced by the fact that the Troutts (1) submitted written notice to Mayflower that they were still awaiting their office furniture and (2) followed that notice with written allegations of liability (*e.g.,* breach of contract, fraud, property damage) and a claim for $75,000 in damages. Mayflower, on the other hand, contends that the Troutts never contracted with it or Valley for the transport of the office furniture in the first place. Thus, Mayflower seeks a declaration that it has no duty to deliver any of the Troutt's office furniture unless and until the Troutts properly arrange for that transport and pay the proper tariff.

■ Based on these allegations, which the Troutts admitted as true by default, the Court concludes that the case or controversy requirement is satisfied because there is a clear, actual dispute between the parties that is neither hypothetical nor conjectural. A declaratory judgment in this case would not serve as a mere advisory opinion; rather, it would adjudicate the rights, duties, and liabilities of Mayflower and the Troutts in relation to their disparate positions over the shipping contract. Further, it would assist the parties in guiding their future conduct (*i.e.,* if Mayflower has a duty to deliver any office furniture, a declaratory judgment stating such would clarify its duty to do so).

Thus, the issues raised may be properly resolved via declaratory relief.[10] By failing to respond to Mayflower's Motion, the Troutts offer nothing to the Court suggesting otherwise.

### b. Does The Court Have The Requisite Authority?

"Under the second element of the *Orix Credit Alliance* test, a district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in federal court; and (3) the district court is prohibited from enjoining the state proceedings under [28 U.S.C. § ] 2283." *Sherwin-Williams,* 343 F.3d at 388 n. 1 (citations omitted). This second step essentially requires the Court to assess whether competing state and federal proceedings exist, and whether the district court is prohibited from intruding in the state action under the Anti-Injunction Act.

Nothing in the record before the Court establishes the existence of a similar, parallel state court action relating to the Troutt's claims against Mayflower. Further, Mayflower's Motion suggests that no parallel action exists. *See* Mot. ¶ 5. Despite proper notice and an extension of time, the Troutts have failed to take proper steps to litigate this dispute, and they have provided nothing to the Court that would justify denying Mayflower's Motion. With no evidence of a similar pending state court action, the Court has the authority to grant declaratory relief under the guidelines set forth in *Orix Credit Alliance.*

---

10. *See* FED. R. CIV. P. 57, Adv. Comm. Notes (stating "[w]ritten instruments ... may be construed before or after breach at the petition of a properly interested party").

**c. Should The Court Issue Declaratory Relief?**

█ Under the third step set forth in *Orix Credit Alliance*, a district court faced with a declaratory relief action must determine whether to exercise or decline jurisdiction. The Fifth Circuit has stated that, when determining whether to exercise or decline jurisdiction over a declaratory judgment action, a district court should consider several important factors, namely: (1) whether a state action is pending in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed the declaratory action suit in anticipation of a suit by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist by allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is convenient for the parties and witnesses; (6) whether retaining the case in federal court will serve judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Sherwin–Williams*, 343 F.3d at 388 (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir.1994)). A district court's failure to consider or balance these relevant factors constitutes an abuse of discretion. *Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 778 (5th Cir.1993) (citations omitted).

In *Sherwin–Williams*, the Fifth Circuit analyzed the factors set forth in *Trejo* and divided them into three different categories: (1) factors relating to federalism and comity (which include the first and seventh *Trejo* factors); (2) factors relating to fairness (which include the second, third, and fourth *Trejo* factors); and (3) factors relating to efficiency (which include the fifth and sixth *Trejo* factors). 343 F.3d at 390–91.

**(1) Federalism Concerns**

In connection with the first *Trejo* factor, "[t]he absence of any pending related state litigation strengthens the argument against dismissal of [a] federal declaratory judgment action." *Id.* at 394. The Court has no evidence before it demonstrating the existence of a parallel state court action, and, therefore, this factor favors retaining Mayflower's request for declaratory relief. Furthermore, based on the allegations in Mayflower's Complaint (which the Troutts admitted by default), the dispute between the Troutts and Mayflower implicates federal law, which also favors retaining jurisdiction.

The final *Trejo* factor is inapplicable here because Mayflower is not asking this Court to construe a state judicial decree of any kind.

█ Based on the record before it, the Court believes that Mayflower's Complaint raises no serious federalism or comity concerns, that these factors favor adjudicating Mayflower's request for declaratory relief, and that the Troutts have failed to provide the Court with any reason to come to an opposite conclusion.

**(2) Fairness Concerns**

With regard to the second *Trejo* factor, Mayflower obviously filed this declaratory action in anticipation of a suit by the Troutts. Nevertheless, "[t]he mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Sherwin–Williams*, 343 F.3d at 397. Mayflower brought its suit with a legitimate purpose in mind, namely the clarification of its duty to the Troutts so that it need not wait until the Troutts see fit to bring an action related to their office furniture.

The third *Trejo* factor requires the Court to examine whether Mayflower engaged in "forum shopping" by bringing its suit in the Western District of Texas. The allegations of Mayflower's Complaint suggest that the Troutts' office furniture was never tendered to Mayflower or Valley at all, and the Western District of Texas appears to be a proper venue for any coercive Carmack Amendment action filed by the Troutts. Additionally, the Western District of Texas has a substantial connection to this suit. The initial estimates and discussions between Valley and the Troutts occurred in El Paso, and the shipment of the Troutts household goods commenced here.[11] Furthermore, because the Carmack Amendment would govern any coercive suit filed by the Troutts in connection with their lost or damaged office furniture, it is evident that Mayflower is not attempting to avail itself of a more desirable body of law. Mayflower gains no choice of law advantage by filing suit in the Western District of Texas, because the Carmack Amendment would govern the Troutts' claims regardless if those claims were filed in another federal court or pursued in a state court.

The fourth *Trejo* factor concerns any inequities that would arise by allowing the declaratory plaintiff to gain precedence in time or to change forums. A declaratory judgment in Mayflower's favor would be *res judicata* as to Mayflower's liability to the Troutts for damage or loss relating to their office furniture. This poses an inequity to the Troutts, particularly if they pursued a separate action in a different forum relating to their office furniture.

However, the Troutts were fully aware of Mayflower's suit and the risk of default judgment, but have chosen to ignore the suit. Thus, they offer no reason to the Court that would support a decision to decline jurisdiction in this case, and the Court concludes that the "fairness" inquiry weighs in favor of declaratory relief.

### (3) Efficiency Concerns

The final inquiry relates to efficiency, and this encompasses the fifth and sixth *Trejo* factors.

The fifth *Trejo* factor relates to whether the federal court is a convenient forum for the parties and witnesses. The Western District of Texas poses an inconvenience only to the Troutts themselves, who now reside in Illinois. Mayflower is a Missouri corporation, but it regularly conducts business in the Western District. Also, the Western District is a convenient forum for any non-party witnesses. The initial discussions relating to the Troutts' move occurred in El Paso and the actual move commenced in El Paso as well. Because the Troutts are key witnesses to any dispute relating to their office furniture shipment, any convenience for non-party witnesses is offset by the inconvenience to the Troutts. The Troutts have failed to make a showing related to this factor. Thus, the Court concludes that this factor neither favors, nor weighs against, retaining jurisdiction over Mayflower's suit.

The sixth factor requires the Court to assess whether retaining Mayflower's suit would further judicial economy. Typically, judicial economy is furthered when declaratory relief would reduce multiple future suits or streamline such proceedings. *See,*

11. "The Carmack Amendment contains two venue provisions. First, in an action against a 'delivering carrier,' venue is proper in a federal judicial district through which the defendant carrier operates. Second, in an action against a 'carrier responsible for loss,' venue is proper in the judicial district in which the loss is alleged to have occurred." *New Orleans Lakal Envelope Co., Inc. v. Chicago Exp., Inc.*, No. Civ. A. 99–2174, 1999 WL 1124788, at *2 (E.D.La. Dec.7, 1999).

*e.g., Sherwin–Williams,* 343 F.3d at 400 (stating that declaratory relief would further judicial economy by decide "issues critical to [declaratory plaintiff's] role in future suits"); *Travelers,* 996 F.2d at 776–77 (stating that avoidance of multiple lawsuits is legitimate reason for bringing declaratory judgment action). A declaratory judgment in Mayflower's favor would not reduce multiple suits in this regard because it only seeks to resolve issues between Mayflower and the Troutts. Thus, this factor neither favors nor weighs against issuing declaratory relief.

### (4) Summation Of Factors

In sum, the Court believes that all the *Trejo* factor balance in favor of resolving Mayflower's request for declaratory relief. The Court should not grant a declaratory judgment if it will not serve a useful purpose; if the action will "clarify and settle legal relations in issue" and "terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to the present action," a declaratory judgment is proper. *Gruntal & Co., Inc. v. Steinberg,* 837 F.Supp. 85, 89 (D.N.J. 1993) (citation omitted). A declaratory judgment in this case will do just that. First, it will settle any claim that Mayflower must deliver the Troutts' office furniture. Second, it will stop the accrual of other potential damages, thus furthering one of the DJA's primary purposes.[12] Third, it will afford Mayflower relief from any uncertainty relating to its duties and will remove the threat of future litigation by the Troutts on this issue.

■ Because the Troutts have admitted all well-pleaded factual allegations in Mayflower's Complaint as true, and those allegations establish that (1) the Troutts never requested Mayflower or Valley to transport their office furniture; (2) the Troutts only contracted to ship various household items and goods; (3) Mayflower was only responsible for shipping the Troutts' household items; and (4) Mayflower has no duty to transport the Troutt's office furniture based on the Bill of Lading and Household Inventory of Goods cited in the Complaint. Thus, Mayflower cannot be held liable for any loss of, or damage to, the Troutts' office furniture under the referenced Bill of Lading and Household Goods Description Inventory to transport the Troutt's office furniture.[13]

12. Generally, declaratory relief is inappropriate to solely adjudicate past misconduct. However, "there are circumstances in which anticipatory judgments of non-liability may be appropriate under the DJA, particularly in regards to claims asserting unaccrued or undefined rights or obligations arising under contractual relations such as insurance and intellectual property." *Dow Jones & Co., Inc. v. Harrods, Ltd.,* 237 F.Supp.2d 394, 426 (S.D.N.Y.2002) (stating further that DJA is generally inappropriate to adjudicate liability in tort). Here, a declaratory judgment would stop any possible other damages from accruing, and thus goes beyond solely adjudicating past misconduct. Although the Carmack Amendment's terms appear to limit liability to the value of the property lost or damaged, courts have held otherwise. *Am. Nat'l Fire Ins.,* 325 F.3d at 931 (stating recoverable damages may include reasonably foreseeable consequential damages); *Air Prods. and Chemicals v. Ill. Cent. Gulf R.R. Co.,* 721 F.2d 483, 485–86 (5th Cir.1983). In fact, non-speculative lost profits may be recovered. *Am. Nat'l Fire Ins.,* 325 F.3d at 931. By entering a declaratory judgment, the Court would be able to stop damages from accruing while the Troutts decide whether and when to file a coercive action against Mayflower. The Court can fathom a variety of damages (including, possibly, a claim for lost profits resulting from their lack of office furnishings) that could mount if the Troutts waited to file suit.

13. Mayflower made no formal request for costs in its Motion, although its proposed default judgment included a reference to costs. Without any explanation or itemization, the Court will not award costs.

## III. CONCLUSION

Based on the above analysis of facts and legal principles, the Court concludes that a declaratory judgment should issue and that Mayflower's Motion [Docket No. 4] should be granted. By granting its Motion, Mayflower's Request [Docket No. 10] is moot and should be denied.

Accordingly, **IT IS ORDERED** that Mayflower's Motion is **GRANTED**. The Court will enter a separate order detailing the declaratory relief provided to Mayflower.

### *FINAL JUDGMENT AND ORDER OF DECLARATORY RELIEF*

On this day, the Court granted Plaintiff's Motion for Default Judgment and request for declaratory relief. Pursuant to Federal Rule of Civil Procedure 58, the Court enters final judgment in favor of Plaintiff and against Defendants.

In accordance with the Court's order granting Plaintiff's Motion for Default Judgment, the Court also **DECLARES** that Mayflower has no duty to transport the Troutt's office furniture based on the Bill of Lading and Household Inventory of Goods cited in the Complaint. Because the Troutts admit that they never arranged for the delivery of their office furniture, Mayflower has no obligation to transport that furniture and cannot be held liable to the Troutts in connection with that office furniture.